714 So.2d 252 (1998)
STATE of Louisiana
v.
Ralph TATE.
No. 98-KA-117.
Court of Appeal of Louisiana, Fifth Circuit.
May 27, 1998.
*253 Frank Sloan, Covington, for Defendant/Appellant.
Paul D. Connick, Jr., District Attorney, Rebecca J. Becker, Terry Boudreaux, Assistant District Attorneys, Gretna, for Plaintiff/Appellee.
Before GRISBAUM, GOTHARD and DALEY, JJ.
DALEY, Judge.
Defendant, Ralph Tate, appeals his conviction of obtaining a controlled dangerous substance by fraud and deceit, in violation of LSA-R.S. 40:971. On appeal, he assigns as error the trial court's denial of his Motion to Suppress. We affirm.
On June 21, 1995, the Jefferson Parish District Attorney's Office filed a bill of information charging the defendant, Ralph Tate, with one count of obtaining a controlled dangerous substance by fraud and deceit, in violation of LSA-R.S. 40:971.[1] Defendant was arraigned on July 24, 1995, at which he pled not guilty. On March 18, 1996, pursuant to a preliminary examination, the trial court found probable cause to hold the defendant over for trial. Also on that date, the trial court denied the defendant's motion to suppress evidence and statement.
On July 9, 1997, prior to trial, the defendant re-urged his motion to suppress the statement, and the trial court again denied the defendant's motion. A jury trial was held on July 9, 1997 and July 10, 1997. At the conclusion of the trial, the six member jury unanimously found the defendant guilty as charged. On August 29, 1997, the trial judge sentenced the defendant to serve two years imprisonment at hard labor, with credit for time served. The trial court granted the defendant's motion for appeal on September 2, 1997.
Joseph Henry, the owner of and pharmacist at Bellemeade Discount Pharmacy in Gretna, told the jury that on June 6, 1995, he received a request to refill a prescription of Xanax for Ms. Violet Thiac. Mr. Henry testified that, following his ordinary procedure, he faxed the request over to the listed doctor, Dr. Robert Davis, requesting a refill authorization. The doctor's office called the pharmacy back and told them not to fill the prescription because Ms. Violet Thiac was deceased. Mr. Henry testified that, meanwhile, the man who had called in the refill request was calling continually to see if the prescription was ready. Mr. Henry called the police, who asked Mr. Henry to fill the prescription, and to call the requestor (the defendant, Mr. Tate) and inform him that the prescription was ready. Mr. Henry told the jury that he then called the defendant and told him that the prescription was ready, and paged the police officers. When the defendant came into the store to pick up the prescription, the police were already in the store. Mr. Henry signaled to the police that the defendant was there to pick up the prescription. The defendant picked up the prescription, paid for it, and walked outside the store. Laura Landry, a clerk at Bellemeade pharmacy, corroborated Mr. Henry's story and told the jury that the person who called to request the refills and who continued calling the pharmacy was a male who identified himself as Mr. Tate.
Detective Pham of the Jefferson Parish Sheriff's Office testified that on June 6, 1995, he received a phone call from Mr. Henry about a possible forged prescription. Detective Pham and his partner, Agent Burns, went to the Bellemeade pharmacy to investigate. Their investigation revealed that a person had called in a refill for a prescription intended for a woman who was deceased. They also learned that the person who had called in the prescription left the name of Ralph Tate and a phone number of 431-7333, which was listed for Ms. Althea Thiac of 108 Four O'Clock Lane in Waggaman. Detective Pham's investigation revealed that Denise Thiac and Robert Tate also resided at the Four O'Clock Lane address. Detective Pham and his partner asked Mr. Henry to page them if anyone came to pick up the prescription.
*254 Detective Pham testified that at approximately 3:45 p.m. on June 6, 1995, he and his partner were paged by Mr. Henry. They went inside the store and saw a gentleman, the defendant, purchasing a prescription. As the man turned and walked out of the store, Mr. Henry pointed at the man, and the police followed him outside of the store. At that point the police advised the defendant and Denise Thiac, who was in the car outside the pharmacy, that they were employed by the Sheriff's Office and that both parties would be detained for a short period of time for an investigation. The police then asked the defendant who the prescription belonged to. The defendant replied that the prescription was for Violet Thiac. Agent Burns asked the defendant if he could see the bag. The defendant handed the bag over voluntarily and told the police that the bag contained a filled prescription. The police officers then arrested the defendant and Ms. Thiac and read them their Miranda rights.
Denise Thiac told the jury that on June 6, 1995, she and the defendant were at her mother's house cleaning out her mother's belongings. While cleaning, Denise found an empty prescription bottle that had been issued to her mother. She told the jury that the defendant called in for a refill on the prescription. She told the jury that the defendant knew her mother was deceased at the time he called in the prescription. She also told the jury that it was the defendant's idea to call in the prescription. He did not ask for her permission. She went with the defendant to pick up the prescription. She was sitting in her car when the defendant picked up the prescription, and she told the jury that when the defendant walked out of the store, the police arrested both of them. She further told the jury that she was originally a co-defendant in this case, but that her charges were dismissed for working with the police identifying drug dealers.
Daniel Waguespack of the Jefferson Parish Crime Lab identified the contents of the prescription bottle as Alprazolam, a controlled dangerous substance, commonly known as Xanax. Dr. Robert Davis told the jury that Violet Thiac had been his patient, but that she died in March of 1995. He testified that when he received the request for a refill on Ms. Thiac's prescription, he instructed his staff to inform the pharmacist that Ms. Thiac was deceased, and to call the narcotics division. He identified the drug in the prescription bottle as Xanax, and told the jury that Xanax is a drug frequently abused on the street.
The defendant testified on his own behalf. He told the jury that on June 6, 1995 he was at Denise Thiac's mother's house with her. He testified that he was having a conversation with Denise about how Denise's nerves were "bad." He told the jury that as Denise was going through her mother's things, she found a prescription bottle and asked him to call in for the refill. He called the pharmacy, gave a phone number and his name and asked for a refill. He testified that when he went to pick up the prescription, he walked into the store with Denise, but Denise soon walked out to the car. He testified that he got the prescription and walked out of the store, and that as soon as he walked out of the store, the two detectives arrested him. He told the jury that he didn't have any intention of filling the prescription. He claimed that he did it out of concern for Denise and her nerves. He also told the jury that he did not call the pharmacy several times.
Based on the foregoing, the jury found the defendant guilty as charged.

ASSIGNMENT OF ERROR NUMBER ONE
The trial court erred in denying the defendant's motion to suppress.
By this assignment, defendant contends that his statement to the detectives that the bag he possessed contained a refilled prescription in the name of Violet Thiac should have been suppressed, as it was made during a custodial interrogation, before he was advised of his Miranda rights.
In order for a statement or confession to be admissible at trial, the state must affirmatively show that it was made freely and voluntarily, without inducements, threats, or promises. LSA-C.Cr.P. art. 703 D; LSA-R.S. 15:451; State v. Lavalais, 95-0320 (La.11/25/96), 685 So.2d 1048, cert. denied, *255 Lavalais v. Louisiana, ___ U.S. ____, 118 S.Ct. 85, 139 L.Ed.2d 42 (1997); State v. Bentley, 96-795 (La.App. 5 Cir. 3/25/97), 692 So.2d 1207. If the statement was elicited during custodial interrogation, the state must also prove that defendant was advised of his constitutional right to consult an attorney and his privilege against self-incrimination, as provided in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). State v. Bentley, supra; State v. Dunn, 94-776 (La.App. 5 Cir. 2/15/95), 651 So.2d 1378.
In Miranda, 384 U.S. at 443, 86 S.Ct. at 1612, the Supreme Court defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Louisiana courts have long used a four-factor test to determine whether custodial interrogation has occurred:
1. Whether there was probable cause to arrest prior to questioning;
2. Whether the statements and actions of the police indicate an intent to hold or restrain the accused;
3. Whether the accused reasonably believed he was restrained; and
4. The extent to which the investigation had focused on the accused.
State v. Foret, 96-281, p. 4 (La.App. 5 Cir. 11/14/96), 685 So.2d 210, 222.
The United States Supreme Court has developed an analysis that substantially undermines the four-part test used by our state courts. The existence of probable cause to arrest is largely immaterial to the issue of custody, as are the subjective perceptions of either the interrogating officer or the defendant. The high court has explained that the only relevant inquiry in determining whether there was a formal arrest or a restraint on freedom of movement of the degree associated with an arrest is "how a reasonable man in the suspect's position would have understood the situation." Berkemer v. McCarty, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). See also Thompson v. Keohane, 516 U.S. 99, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995). In United States v. Bengivenga, 845 F.2d 593 (5th Cir.1988), cert. denied, Bengivenga v. United States, 488 U.S. 924, 109 S.Ct. 306, 102 L.Ed.2d 325 (1988), the United States Fifth Circuit recognized the conflict, and chose to follow the Supreme Court's "reasonable person" standard rather than the four-part test.
In State v. Alford, 29,343 (La.App. 2 Cir. 5/9/97), 694 So.2d 1162, writ denied, 97-1844 (La.11/14/97), 703 So.2d 1292, the Second Circuit cites the four-part test, but appears to have based its analysis on the Supreme Court's "reasonable person" test. In that case, officers were alerted to the existence of a marijuana field by an anonymous informant. While on patrol, an officer saw the defendant and his wife walking in the field. The officer approached the couple and questioned them. The defendant gave conflicting explanations of his actions, then admitted his ownership of the marijuana patch. After the admission, the defendant was arrested and was, for the first time, advised of his rights under Miranda. After he was charged with cultivation of marijuana, the defendant filed a motion to suppress the statement, claiming a violation of his Fifth Amendment rights. The trial court granted the motion.
On appeal, the Second Circuit reversed the trial court's ruling. The court likened the factual situation to a Terry[2] stop, and reasoned that an officer is entitled to stop a person he reasonably suspects has committed, or is about to commit a crime, and to ask questions in order to confirm or dispel the officer's suspicions. The detainee is not required to respond, and may leave the scene unless his answers provide probable cause for arrest. The court further found that a seizure does not necessarily occur when an officer simply approaches a person to ask some questions. Such an encounter is consensual as long as the person feels free to disregard the officer's questions and go about his business.
In considering the evidence in this case, we may consider all pertinent evidence adduced at trial; we are not limited to evidence adduced at suppression hearings alone. State v. Tart, 93-0772 (La.2/9/96), 672 *256 So.2d 116, cert. denied, ___ U.S. ____, 117 S.Ct. 310, 136 L.Ed.2d 227 (1996); State v. Byes, 94-611 (La.App. 5 Cir. 12/28/94), 648 So.2d 1073.
Detective Pham testified during the suppression hearing that he was aware that the refilled prescription was under the name of Violet Thiac, who was deceased, and that Mr. Henry had indicated that the defendant was buying the refilled prescription. Detective Pham testified that the defendant was detained at the time of his questioning for an "investigative stop." Although it is true that at the time of his initial questioning, the detective did not know that the defendant was the same person who had called in the prescription, he told the court that he was aware that the defendant was the person who bought the suspicious prescription. Agent Burns testified that the only question the defendant answered before arrest pertained to what was in the bag. The defendant stated that the prescription was for "Denise's mom." The detective's information prior to stopping the defendant, that the refill was called in under the name of a deceased person, and that the defendant was the person who picked up the prescription, was not enough for probable cause to arrest. LSA-R.S. 40:971(B)(1)(b) requires more than a person pick up a forged prescription; it requires that a person knowingly or intentionally acquire or obtain possession of a controlled dangerous substance by misrepresentation, fraud, forgery, deception or subterfuge. At this point, the investigation had not yet established that the defendant knew Mrs. Thiac was deceased or that he had called in the prescription; it only established that he was the person who picked up the prescription for Mrs. Thiac.
Under the test enunciated in Berkemer v. McCarty, supra, in order to determine whether there was a formal arrest or a restraint on freedom of movement of the degree associated with an arrest, the court must determine "how a reasonable man in the suspect's position would have understood the situation." We find that defendant's freedom of movement was not restrained to the degree associated with an arrest. Defendant was approached by Detective Pham immediately upon leaving the store and was advised that the detective was conducting an investigation. Detective Pham then asked Tate what was in the bag. There was no testimony that the defendant was seized or felt that his liberty was restricted in any way.
We also note that under LSA-C.Cr.P. art. 215.1, a law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions. Our review of the testimony shows that Detective Pham's actions did not go beyond these boundaries.
Even we were to find that the defendant's inculpatory statement was improperly admitted at trial, which we do not, such an admission is subject to harmless error analysis. Arizona v. Fulminante, 499 U.S. 279, 310, 111 S.Ct. 1246, 1265, 113 L.Ed.2d 302 (1991); State v. Tart, 93-0772 (La.2/9/96), 672 So.2d 116, cert. denied, Tart v. Louisiana, ___ U.S. ____, 117 S.Ct. 310, 136 L.Ed.2d 227 (1996). We find that the other testimony elicited at trial would render this admission harmless error.
At trial, the pharmacist, the police officers, Denise Thiac, and the defendant himself testified that the defendant called in and picked up the prescription intended for the deceased Violet Thiac. Accordingly, the information elicited by Detective Pham prior to the reading of defendant's Miranda rights duplicates information otherwise adduced at trial, and therefore its admission would have been harmless error.
Accordingly, defendant's conviction is affirmed.
AFFIRMED.
NOTES
[1] The bill of information also charged Denise M. Thiac with one count of R.S. 40:971; however, the charge was dismissed in December of 1995.
[2] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).