712 So.2d 527 (1998)
STATE of Louisiana
v.
Thomas LISOTTA.
No. 97-KA-406.
Court of Appeal of Louisiana, Fifth Circuit.
February 25, 1998.
Rehearing Denied April 17, 1998.
*528 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Assistant District Attorney, Research and Appeals, and Louise Korns, Gretna, for plaintiff-appellee.
William R. Campbell, Jr., New Orleans, for defendant-appellant.
Before GAUDIN, GOTHARD and DALEY, JJ.
GAUDIN, Judge.
Thomas L. Lisotta was convicted of indecent behavior with a juvenile (LSA-R.S.14:81) by a jury in the 24th Judicial District Court and sentenced on September 25, 1996 to seven years at hard labor, the maximum allowable under the statute.
On appeal he argues (1) that the trial judge erred in permitting a witness to testify about earlier incidents involving her and the defendant, (2) that the trial judge erred in allowing evidence of his convictions for showing pornography to juveniles and (3) that his sentence was excessive.
For the following reasons, we affirm Lisotta's conviction but set aside the sentence and remand for resentencing.
*529 Indecent behavior with a juvenile is the commission by anyone over the age of 17 of any lewd or lascivious act upon the person or in the presence of any child under the age of 17, where there is an age difference of greater than two years between the two persons, with the intention of arousing or gratifying the sexual desires of either person.
Damaging testimony against Lisotta was provided by the victim, identified as A.B. in this opinion, and by a state witness identified herein as C. D., who testified over defense objection about events that occurred in 1981 or 1982.
A.B. said that she had been in the eighth grade at a school where Lisotta was a physical education teacher. Approximately three years later, in 1995, A.B. said that she received a series of telephone calls from Lisotta, who was then teaching at an all-boys high school in Metairie. This led to several visits by A.B. to Lisotta's residence. On the second-to-last visit, A.B. said that Lisotta played pornographic videotapes for her and several of her girlfriends.
The final visit, on April 15, 1995, took place late at night when A.B. went to Lisotta's residence alone and uninvited to look for a pager (beeper) she thought she had left there. A.B. said that Lisotta then made the sexual advances that led to his subsequent arrest and conviction. At that time, A.B. was six months shy of her 17th birthday. Lisotta was 32.
A.B. said that Lisotta kissed her, took his and her clothes off, touched her whole body, inserted his fingers in her vagina and told her he was going to have sex with her. He did not have sex with her, A.B. stated, because she "pushed him off." A.B. said after she "pushed him off" she:
"... sat there and cried and he came by me and put his arm around me and he said, `Don't cry. Don't be scared because you're a virgin. It's not going to hurt ...'"
A.B. testified that she put her clothes back on and "... ran out of the house and got in my car and drove off."
Lisotta testified differently. He said that between 1 and 2 a.m. he answered a knock at his door. It was A. B., alone. She seemed drunk, Lisotta said, and she put her arms around him and kissed him. He pushed her away and told her she was embarrassing herself. She took her shirt off. He told her to put it back on, which she did and then left. Lisotta stated that A.B. was at his house only a very short time, like 30 or so seconds.
By returning a guilty verdict, the jury obviously found A. B.'s version more creditable.

ASSIGNMENT NO. 1
During the trial, the district judge allowed the testimony of C. D., who said that she was 14 or 15 years of age in 1981 or 1982 when Lisotta, then 19 or 20 years old and her softball coach, took her to Jefferson Playground one night and forced himself sexually on her.
Generally, evidence of other crimes or bad acts it not admissible; however, when such evidence tends to prove a material issue and has independent relevance other that just showing that a defendant is of bad character, it may be admitted by certain statutory and jurisprudential exceptions to this exclusionary rule. These exceptions are codified in LSA-C.E. art. 404(B)(1) which provides in pertinent part:
"Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding."
One of the above enumerated factors must be at issue, have some independent relevance or be an element of the crime charged in order for the evidence to be admissible.
*530 In State v. Prieur, 277 So.2d 126 (La.1973), the Louisiana Supreme Court set out the requirements for admission of such evidence. Within a reasonable time before trial, the state must furnish in writing to the defendant a statement of the acts or offenses it intends to offer, describing same with the general particularity required of an indictment or information. In the written statement, the state must specify the exception to the general exclusionary rule upon which it relies for the admissibility of the evidence of other acts or offenses.
The probative value of such evidence must be weighted against its prejudicial effect. The fact that the other acts or crimes happened some time before the offense for which the defendant is on trial is not sufficient, in and of itself, to require the exclusion of the evidence. Remoteness in time, in most cases, is only one factor to be considered when determining the probative value of the evidence. A lapse of time usually goes to the weight of the evidence rather than to its admissibility.
Here, the state gave appropriate Prieur notice. At a hearing on June 6, 1996, C.D. testified about her prior relationship with Lisotta and the sexual events at Jefferson Playground. The state contended that C. D.'s testimony would show Lisotta's knowledge, intent, motive and system. Lisotta argued that C. D.'s testimony was inadmissible because the incidents she described were too remote from and dissimilar to the events involving Lisotta and A.B. The trial judge agreed with the prosecution and let C.D. testify.
C.D. said that Lisotta would sometimes drive her home after softball practice. One night he drove to Jefferson Playground. From C. D.'s trial testimony:
"... he drove to the playground. When we got there the lights were off so we parked on the side of the gym. We got out the car. I got out the car with him and we walked back to the football field. He grabbed the beer out the back seat and took a blanket out of his trunk. We went out to the football field and he placed the beer down on the bench and laid out the blanket, opened up the beer and handed me one. I took some sips out of the beer and he was drinking one and he I think grabbed me by the hand and brought me over to the blanket so I sat down on the blanket with him and he started kissing me and, you know, we were kissing and I guess I was okay with that at the time because, like I said, I did have crush on him so we were kissing and I justI guess, I don't know, being 15 or whatever I was just reallyI wasn't experienced or anything. I didn't expect anything more than that. Not long after we were kissing he starting taking my clothes off and he beganI was in my softball uniform and he began taking my shirt off and my pants off and I kept telling him, no, not to do it and I was trying to stop him. I was trying to hold my clothes on and he continued to keep pulling them off and eventually I was fighting with him ... and he forced the clothes off of me ...
"Just like things like, you know, `It's okay. Just let me do this. It's going to be okay,' like trying to reassure me it was okay. And he then pushed me down on the ground and he was kissing me some more and he was holding me down and he had taken his clothes off and he was trying tohe was trying to have sex with me. He was trying to insert his penis into my vagina and he kept trying and I kept telling him, `No, stop,' and I kept trying to push him away. I kept trying to close my legs and he kept forcing them back open and he kept, he was like holding me down and kept doing what he was doing. Then he used his fingers and he was inserting several of them and he just kept inserting his fingers inside of me. He kept telling me that it was okay, that he wanted to make love to me and he just kept trying. He used his fingers for awhile. I guess I was just fighting with him and he managed to partially insert his penis into me. I'm not sure if he totally did or what but then he had stopped and he started kissing me around by breast and stuff and then he moved down and he started having, performing oral sex on me and I justI don't know, I just kept telling him, `No, stop,' but I just didn't really know what to do ...
"I just kept trying to push him off of me because I didn't have any clothes at all on *531 and I don't think I would have ran away. He was performing oral sex on me and then I think he like came back up and just kept trying to do it all again and then he stopped and he sat up and he grabbed me by my hair and pulled me down towards his penis and he kept telling me to suck it and he was just pulling my hair and forcing my head down on his penis and just kept telling me to suck and suck really hard and I just really wasn't doing anything and after he did that for awhile he just kind of stopped and pushed me aside and ... he got angry ...
"... he was touching himself and I didn't want to look and I just kept looking for my clothes and eventually he got up and he said, `Let's go.'"
Lisotta admitted having a romantic involvement with C.D. in 1984 when he was 21 and she was 17.
The Jefferson Playground incident C.D. described took place 14 or 15 years before Lisotta's 1996 trial. Apparently there are no reported Louisiana opinions saying that events occurring this length of time before trial could not be acceptable Art. 404 evidence solely because of the time element.
We are aware of State v. Toups, an unpublished opinion from the First Circuit Court of Appeal, No. 95 KA 2106. In this case in the 32nd Judicial District Court, the defendant was charged with aggravated rape. To help obtain a conviction, the state called a 26-year-old woman who said the defendant had kissed her breasts and fondled her vaginal area when she was nine or 10 years of age. This had occurred 16 or 17 years before this trial and did not involve actual rape.
While the First Circuit's opinion affirming the conviction was not reported, the denial of writs by the Louisiana Supreme Court was published at 699 So.2d 364 (La.1997). Writs were denied by a 4-3 vote. The Chief Justice, who would have granted the writ, wrote:
"This case is just another in a series of recent cases in which the lower courts have judicially expanded article 404(B) beyond its legislatively imposed limits in order to permit the introduction of `other crimes' evidence in sex offense cases. See, e.g., State v. Sturdivant, 27,680 (La.App.2d Cir 2/28/96), 669 So.2d 654; State v. DeRoche, 629 So.2d 1267 (La.App. 5th Cir. 1993); State v. Driggers, 554 So.2d 720 (La.App. 2d Cir.1989). The lower courts' rulings in these cases follow a national trend towards broader admissibility of `other crimes' evidence in cases involving alleged sexual abuse of minor children. GEORGE W. PUGH ET AL., HANDBOOK ON LOUISIANA EVIDENCE LAW 287 (1997) (citing law review articles). In my view, this Court should render an authored opinion in this important, but as yet, unresolved area. The case sub judice would be a good case for that purpose."
We are also aware of State v. Jackson, 625 So.2d 146 (La.1993), in which a grandfather was charged with sexually molesting his granddaughters. The Louisiana Supreme Court sanctioned the testimony of the defendant's three adult daughters, who said that the defendant had fondled their breasts and kissed them 15 to 24 years ago. The Supreme Court, at page 152, found such testimony "... neither overly prejudicial nor too remote."
In any event, we are unaware of any reported Louisiana opinions saying that events occurring 14 or 15 years before a trial could not be acceptable evidence against a charged defendant only because of the time element. Accordingly, we cannot say the Lisotta trial judge erred in this regard.
In State v. Jackson, supra, while the Supreme Court authorized the daughters' testimony about breast-fondling and kissing, finding that the probative value of this testimony outweighed any prejudicial effect, the Court did not allow the daughters to testify that their vaginas had been fondled by their father and that they had been raped. The Court explained that these other acts were dissimilar and more serious than the current changes of molesting, and that consequently the excluded testimony would have only have served "... to influence the jury."
In Lisotta's case, his behavior with C. D., according to her testimony and A. B.'s, was more aggressive than his late-night encounter with A.B. Nonetheless, there was sufficient similarity to support the trial judge's *532 decision permitting C.D. to testify. Like A. B., C.D. was younger than Lisotta and vulnerable. While C.D. admittedly had a "crush" on Lisotta, as A.B. apparently had, he was a coach, an authoritative figure and more mature. Also like A. B., C.D. resisted Lisotta's advances when she realized how serious and far-reaching they were.
This assignment of error is without reversible error.

ASSIGNMENT NO. 2
Lisotta argues here that the trial judge wrongly allowed evidence of his (Lisotta's) earlier convictions for showing pornography to juveniles. These convictions, Lisotta contends, were obtained illegally and unconstitutionally and are under appeal.
The record indicates, however, that Lisotta did not object to the admission of this evidence. LSA-C.Cr. P. art. 841(A) reads:
"An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. A bill of exceptions to rulings or orders is unnecessary. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires to court to take, or of his objections to the action of the court, and the grounds therefor."
It is well-established that a new basis for an objection cannot be raised for the first time on appeal. See State v. West, 419 So.2d 868 (La.1982), and State v. Bell, 639 So.2d 856 (La.App. 5th Cir.1994).

ASSIGNMENT NO. 3
In this assignment of error, Lisotta contends that his sentence is excessive. We agree. A conviction under R.S. 14:81 authorizes incarceration up to seven years.
Maximum sentences, as the one imposed in this case, are appropriate only in cases involving the most serious violations of the statute and the worse type of offender. The facts and circumstances of this crime do not justify a maximum seven-year sentence.
While Lisotta and A.B. had been at the same school, they were not at the same school in 1995. He had no criminal record prior to 1996 and there was evidence of only one incident of physical force involving the victim, who by her own testimony went alone and late at night to Lisotta's residence. In State v. Penn, 633 So.2d 337 (La.App. 1 Cir.1993), a maximum sentence of seven years was imposed for indecent behavior with a 12-year old victim, but the proven particulars of that case involved much more reprehensible conduct by the defendant, who had molested the young victim "... constantly and continuously for an extended period of time." From State v. Penn at page 339:
"... the defendant had even joined the same church attended by the victim, and that the acts continued to occur even at the church."
The state has not cited any indecent behavior cases comparable to Lisotta's where the maximum sentence was imposed. Lisotta, on the other hand, submitted numerous cases where the sentence was less than the maximum for what appeared to be more serious criminal behavior with juveniles usually much younger than A. B., including State v. Mathews, No. 96-6494 of the 24th Judicial District court, wherein the trial judge who sentenced Lisotta sentenced Frank Mathews to three years on a sexual battery charge. That defendant assaulted a five-year-old boy, using pliers to pinch the victim's penis. Sexual battery has a 10 year maximum sentence.
While a trial judge has wide discretion in sentencing, here the maximum given to Lisotta was disproportionate to the realities of the crime and was an abuse of discretion. A lesser sentence would not deprecate the seriousness of Lisotta's behavior.
We remand for resentencing.
CONVICTION AFFIRMED; SENTENCE SET ASIDE; REMANDED FOR RESENTENCING.
DALEY, J., dissents with reasons.
DALEY, Judge, dissenting.
I agree with the majority on all issues except the setting aside of the defendant's sentence. Given the facts of this case I find that the sentence of seven years was within the appropriate range to be imposed by the *533 trial judge and I would affirm the conviction and the sentence.