759 So.2d 884 (2000)
STATE of Louisiana
v.
Allen MAISE (Sentenced as "Alan Maise").
No. 99-KA-734.
Court of Appeal of Louisiana, Fifth Circuit.
March 22, 2000.
*888 Bruce G. Whittaker, New Orleans, Louisiana, Attorney for Defendant-Appellant, Allen Maise.
Paul D. Connick, District Attorney, 24th Judicial District, Parish of Jefferson, State of Louisiana, Rebecca J. Becker, Terry Boudreaux,(Appellate Counsel), James Scott, III, Donald A. Rowan, Jr.,(Trial Counsel), Assistant District Attorneys, Louisiana.
Panel composed of Judges SOL GOTHARD, THOMAS F. DALEY and SUSAN M. CHEHARDY.
CHEHARDY, Judge.
Allen Maise appeals his conviction of violation of La. R.S. 14:42, aggravated rape of a juvenile under 12 years of age, and his sentence of life imprisonment at hard labor without benefit of probation, parole or suspension of sentence. We affirm, but remand for correction of a patent error.
On June 4, 1998 the 16-year-old defendant was charged as an adult by grand jury indictment. He pleaded not guilty on June 19, 1998. Following defendant's motion to appoint a sanity commission and the resulting proceedings, the defendant was found competent to stand trial on September 10, 1998.
After four days of trial, on January 19, 1999 the jury returned a verdict finding defendant guilty as charged. On March 9, 1999 the trial court sentenced the defendant to life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence. The defendant's motion to reconsider sentence was denied on March 18, 1999 and he filed a timely motion for appeal.

FACTS
This case involves the aggravated rape of the six-year-old victim, C.M., by the defendant.[1]
Dr. Scott Benton, an expert in pediatric forensic medicine, examined C.M. on June 30, 1998 (approximately two months after the date of the incident made the basis of this prosecution). Dr. Benton testified that during his interview with C.M., C.M. told the doctor, "A.J. [the defendant] would get on top of me while I was watching TV or playing Nintendo.... Sometime he stick his private in my hiney. It made me cry and cry because it hurted." Dr. Benton found C.M.'s statements to be detailed and consistent, with no evidence of fabrication.
Dr. Benton also performed a sexual abuse exam on C.M. The sexual abuse exam was normal, revealing no objective signs of abuse. Dr. Benton told the court, however, that he would expect the exam to be normal, because the area heals easily.
Philip Hemphill, a social worker, testified that he had been working with the defendant in group therapy since 1997. He told the jury that the defendant had originally been referred to the therapy group by the juvenile probation department, where the defendant was on probation for the sexual battery of a three-year-old girl. Hemphill testified that on April 27, 1998 the defendant's mother telephoned Hemphill's co-worker and informed her there was a concern that the defendant had re-offended. Hemphill testified further that on April 30, 1998 during the group therapy session the defendant *889 told the group that he had reoffended by anally penetrating his six-year-old cousin. According to Hemphill, the defendant stated he knew that he penetrated him, because he heard him yell and scream. He attempted to cover his mouth or tell him to quiet down, but then the child's grandmother came in. After the group therapy session, Hemphill telephoned the defendant's probation officer and informed her of the need for intervention.
The victim's grandmother, Ethel Sampey, testified that the child C.M. is her grandson and is six years old. She said that on an evening in April 1998, she was watching television in the living room while her grandson was playing a video game in his bedroom. The defendant, who is her nephew, was in the living room watching television with her. C.M. asked the defendant to come into his room and help him with his video game. The defendant left the living room for her grandson's bedroom.
Shortly afterwards, Sampey heard her grandson scream. She ran back to C.M.'s room, where she saw C.M. lying on the foot of the bed. A.J. was hugging him, telling him, "Be quiet, everything's going to be okay." Sampey said that when she entered the room, C.M. was wearing his underwear and a tee shirt because those are his sleeping clothes and he was ready for bed. The defendant was wearing shorts and a tee shirt.
Sampey asked the defendant what happened and he told her he didn't know. She told him to go home.
After the defendant left, Sampey asked C.M. why he was crying. C.M. told Sampey, "A.J. hurt me real bad." Sampey asked him where and he responded, "My booty." She said, "How did he hurt your booty?" and C.M. told her, "With his privates." Later that evening Sampey confronted the defendant's stepfather, Frank Polito, who told her that the defendant's mother had been instructed not to leave the defendant with small children.
Sampey testified further that C.M. now exhibits disturbed sleeping habits and does not like to sleep in his own bed. He cries out at night and says things such as, "Stop. Leave me alone. You're hurting me. Don't touch me. Just stop. Quit."
Amelie Gordon, an employee of the Jefferson Parish Sheriff's Office assigned to the Jefferson Children's Advocacy Center, testified that she interviewed the victim on May 20, 1998. She stated that she asked C.M. non-leading questions and she identified State Exhibit 1 as the videotape she made of the interview.
C.M., the victim, testified that he remembered making the tape. The videotape then was played for the jury. On the videotape C.M. told Amelie Gordon that "A.J.," his "big cousin," whom he also identified as "Allen," got on top of him and hurt his "butt" with his "wee-wee". C.M. said, "He came right up to the heart and it hurted bad bad.... It hurted so bad, I cried so loud."
After the videotape concluded, C.M. testified that everything he said on the tape was truthful. He identified the defendant in open court and said that the defendant was the one who did "those things to him." On cross examination he was asked whether the defendant "touched your butt with his wee-wee" and he responded, "Yeah."
Wanda Brown of the Department of Juvenile Services identified the defendant as her client during his probation for a sexual battery. Brown testified that the defendant's social worker contacted her and told her that the defendant wished to speak with her. Brown got on the phone with the defendant and asked "if he knew what was going on with him in regards to what was being said." He responded, "Yes." She then asked if he wanted to talk about it and he did. She asked the defendant if he had sex with the little boy. The defendant said, "Yeah." She then asked him what happened. The defendant told her that he undressed the boy, undressed himself, *890 and got on top of the boy. Brown said further:
I remember asking him did he penetrate him. And his response was..., "Well, the doctor said I didn't." And I said, "You should know if you did. Did you penetrate him?" And he said, "Yes."
On cross examination Brown testified that the defendant himself was a victim of sexual abuse perpetrated by his brother and his father over a seven-year period. The abuse included fondling and anal intercourse. Asked what happened to defendant's father and brother, Brown stated that the father had committed suicide and the brother was in prison. She also stated that at the time of the incident in this prosecution, the defendant was undergoing both individual counseling and group therapy for being both a victim and a perpetrator of sexual abuse.
Detective Sergeant Kelly Jones of the Jefferson Parish Sheriff's Office testified regarding her investigation of a September 13, 1996 incident in which the defendant sexually abused a three-year-old girl. Jones said that defendant took the child, who was playing with neighborhood children, into a neighbor's home while the neighbor was outside talking to other parents. He brought her into a bedroom, removed her clothing, removed part of his clothing, touched her on the vaginal area with his hand, and inserted his penis in her vagina. Jones said the defendant denied penetrating the victim. He subsequently was adjudicated delinquent for sexual battery.
The defendant's mother, Mary Polito, testified on his behalf, relating the defendant's history of abuse. She stated that she knew nothing of the abuse until the defendant was 13 years old, when she became aware that the defendant had been sexually abused by his father from the time he was two years old and by his brother from the age of six years. She said that the defendant was raped every other day. She also said she has a daughter who was raped by the father at the age of eight.
Polito testified that the defendant's father committed suicide after she confronted him about abusing her daughter. She said that the defendant's brother who abused him was serving a 10-year prison sentence. Polito testified that the defendant was in group therapy because of the prior offense he committed with a three-year-old girl. In addition, at one point she got the defendant admitted to River Oaks psychiatric hospital after he tried to commit suicide, but he was discharged due to insurance problems. Polito testified further that she and her husband Frank attended all of the defendant's therapy sessions.
Polito said first became aware of the instant offense when her sister called and said that the defendant had touched her grandson. Upon finding out about the offense, Polito called the Crisis Center to report that the defendant had re-perpetrated.
Polito testified that the police were called two months later. Polito said that she begged her sister to call the police, because she wants the defendant to get help. She testified that the defendant told her that he had touched C.M.'s privates.
Frank Polito, Jr., defendant's stepfather, also testified on behalf of the defense. He said that, the night of the incident, Allen asked him if he could go to Ethel Sampey's house to play with C.M.'s video game. Sampey was there, as well as her husband, Mack. Later in the evening Ethel called the Polito home and then came "storming into the house" indicating she wanted to hurt Allen. Frank Polito followed her back to her house, where he found C.M. sobbing. Both Frank and Sampey looked at C.M.'s rear, but found no signs of bleeding or that he had been penetrated. Polito added that he had talked to C.M. on the night of the offense and that C.M. never told him that there was penetration.
*891 Allen Maise testified on his own behalf. He reiterated his own history, confirming that he was molested by his father from the age of two and by his brother from the age of six until he was 12. He was afraid to report it to anyone because of threats from his brother. The defendant admitted that he had previously been adjudicated delinquent because of an incident with a little girl. He said that he accepted responsibility for that incident and knew he had a problem. He testified that he attended group therapy with Phillip Hemphill at the New Orleans Adolescent Home and at Family Services of Manhattan with therapist Joan Bell.
The defendant discussed the incident resulting in this case. He said that the night of the incident he was watching television with his aunt and C.M. kept coming in asking him to play a video game, so he left the room to go and help C.M. with the game. The defendant testified that he went into the victim's room and rubbed C.M.'s "private area" with his hand.
The defendant denied undressing the victim or himself. He said that he touched the victim over his clothes. He admitted to touching the victim's anus, but denied touching the anus with his penis. He admitted that the victim cried out, but denied that there was any penetration.
The defendant said that he told Philip Hemphill that he touched the victim with his hand. He admitted that he told Wanda Brown that he penetrated, but he said that he did not know the meaning of "penetration" when he talked to Brown. He denied ever telling anybody he raped or put his penis in the victim. The defendant again specifically denied the allegations of rape and said that the victim was lying.
Based on the foregoing, the jury found the defendant guilty as charged.
ASSIGNMENT OF ERROR NO. 1
The trial court erred in denying his motion to suppress a statement to his probation officer.
At trial the defendant's probation officer testified that, during a phone conversation with the defendant, the defendant stated he had sex with the victim, detailing that he undressed him, undressed himself, and got on top of the victim. Brown asked the defendant if he penetrated the victim, to which the defendant replied, "Well, the doctor said I didn't." Brown told the defendant, "You should know if you did [penetrate]. Did you penetrate him?" She said the defendant replied, "Yes."
On appeal the defendant argues that his statements to Brown should have been suppressed.[2]
The trial court's determination that a statement was free and voluntary is entitled to great weight and will not be disturbed unless it is not supported by the evidence. State v. Benoit, 440 So.2d 129, 131 (La.1983).
Before a purported confession can be introduced into evidence, the State has the burden of affirmatively showing that it was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements, or promises. La. R.S. 15:451; La.C.Cr.P. art. 703(D).
The prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. Miranda v. Arizona, *892 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). Those safeguards-commonly known as the Miranda warnings-are as follows: "Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." Id.
Miranda warnings are only necessary when a confession is made to a "state actor." See State v. Martin, 94-252 (La.App. 5 Cir. 10/12/94), 645 So.2d 752, writ denied, 94-2787 (La.3/10/95), 650 So.2d 1174. The person to whom the defendant's confession was made in the instant case was a probation officer for the parish department of juvenile services. The parish is an agency of the state; therefore, the probation officer was a "state actor."
In order for the Miranda protections to apply, however, it must also be determined that the defendant had undergone a custodial interrogation. In Miranda the Supreme Court defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." 384 U.S. at 444, 86 S.Ct. at 1612.
"[T]he only relevant inquiry in determining whether there was a formal arrest or a restraint on the freedom of movement of the degree associated with an arrest is `how a reasonable man in the suspect's position would have understood the situation.'" State v. Hayes, 98-485 (La.App. 5 Cir. 11/25/98), 726 So.2d 39, 42, quoting Berkemer v. McCarty, 468 U.S. 420, 442, 104 S.Ct. 3138, 3151, 82 L.Ed.2d 317 (1984).
Accordingly, in order to determine whether the defendant was in custody, the court must find whether a reasonable person in the defendant's circumstances would have understood his conversation with the probation officer to constitute a restraint on freedom of movement of the degree associated with formal arrest.
The defendant here was not in the type of custody envisioned by Miranda. He was not under arrest; in fact, he was not even in the physical presence of the probation officer, but was only speaking to her on the telephone. The defendant was not in custody at the time he made the statements and was not subject to the inherently coercive custodial interrogation for which Miranda was designed. See Minnesota v. Murphy, 465 U.S. 420, 433, 104 S.Ct. 1136, 1145, 79 L.Ed.2d 409 (1984). Nor was his privilege against self-incrimination violated, because he was not compelled to make the statements. Id., 465 U.S. at 440, 104 S.Ct. at 1149. Accordingly, defendant's statements to Brown were not invalidated by her failure to advise him of his Miranda rights.
In addition, however, we must ascertain whether the State met its burden of affirmatively showing that the statement was made freely and voluntarily and not under the influence of fear, duress, intimidation, menace, threats, inducements, or promises.
The defendant was a juvenile at the time of his statement to Ms. Brown. "The confession of an accused of any age is valid only if it was given knowingly and voluntarily." State v. Fernandez, 96-2719 (La.4/14/98), 712 So.2d 485, 487. The determination of whether a juvenile's incriminating statements are admissible is made on the totality of the circumstances surrounding the interrogation. Id. Such circumstances include "evaluation of the juvenile's age, experience, education, background, and intelligence." Fare v. Michael C., 442 U.S. 707, 725, 99 S.Ct. 2560, 2572, 61 L.Ed.2d 197 (1979).
Considering the totality of the circumstances, we find that the defendant was free to discontinue the phone conversation *893 at any time; therefore, the defendant's confession was voluntary.
Even if we were to conclude that the trial court had erred in denying the motion to suppress, admission of the statement is subject to a harmless error analysis. Arizona v. Fulminante, 499 U.S. 279, 310, 111 S.Ct. 1246, 1265, 113 L.Ed.2d 302 (1991). The introduction of the victim's live and videotaped trial testimony, which made clear that the defendant penetrated the victim, renders the statement harmless error. State v. Tate, 97-117 (La.App. 5 Cir. 5/27/98), 714 So.2d 252, 256.
ASSIGNMENT OF ERROR NO. 2
The trial court erred in admitting evidence of other crimes.
The defendant argues that the trial court erred by admitting evidence of the defendant's juvenile adjudication of delinquency for the sexual battery of a three-year-old girl. Specifically, the defendant challenges the admission of testimony by the defendant's social worker, Philip Hemphill, and Detective Sergeant Kelly Jones.[3]
Detective Sergeant Jones testified that her investigation of the incident, which took place before the offense in this case, revealed that the defendant took a three-year-old girl into her home, undressed her, undressed himself, touched the girl's vaginal area, and inserted his penis into her vagina. Jones testified she did not arrest the defendant for rape, but for sexual battery, and the defendant was adjudicated delinquent on the charge of sexual battery.
Hemphill testified that the defendant got the three-year-old victim into a home, "pulled her pants down, pulled his pants down, rubbed his penis on her genital area, as well as his hand on her genital area."
Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident,... or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
La. C.E. art. 404(B)(1).
Evidence of other crimes or bad acts generally is not admissible; howver, when such evidence tends to prove a material issue and has independent relevance other than showing that a defendant is of bad character, it may be admitted by certain statutory and jurisprudential exceptions to this exclusionary rule. State v. Silguero, 608 So.2d 627, 629 (La.1992)
First, one of the above-enumerated factors must be at issue, have some independent relevance or be an element of the crime charged in order for the evidence to be admissible. State v. Jackson, 625 So.2d 146, 149 (La.1993).
Second, the State must prove that the defendant committed the other acts by a preponderance of the evidence. State v. Hernandez, 98-448 (La.App. 5 Cir. 5/19/99), 735 So.2d 888, 898-899, writ denied, 99-1688 (La.11/12/99), 750 So.2d 194.
Third, the requirements for admission of such evidence, set forth in State v. Prieur, 277 So.2d 126, 130 (La. 1973), must be met: Within a reasonable time before trial, the State must furnish to the defendant a written statement of the acts or offenses it intends to offer, describing same with the general particularity *894 required of an indictment or information. In the written statement, the State must specify the exception to the general exclusionary rule upon which it relies for the admissibility of the evidence of other acts or offenses. Finally, the probative value of such evidence must be weighed against its prejudicial effect. State v. Lisotta, 97-406 (La.App. 5 Cir. 2/25/98), 712 So.2d 527, 530.
The defendant first notes the State's failure to comply with the notice requirement of Prieur, in that the State did not file the written statement required by Prieur. Not every violation of pre-trial discovery procedures (including Prieur violations) requires reversal, however; before a defendant can complain of such a violation, he must show prejudice. State v. Sanders, 93-0001 (La.11/30/94), 648 So.2d 1272, 1284. The defendant was aware of the State's intention prior to trial and there was a pre-trial Prieur hearing. Therefore, the defendant was not prejudiced by the State's failure to comply with the notice requirement.
Moreover, the defendant waived his objection that the State failed to provide him with a Prieur notice of intent when he failed to object at trial to the lack of notice by the State. State v. Welch, 615 So.2d 300, 303 (La.1993).
At the pre-trial Prieur hearing, the State argued that the evidence of the prior crime was admissible to prove intent and motive. In child sexual abuse cases evidence of other sexual crimes committed on victims unrelated to the defendant may be admissible to show the "lustful disposition" of the defendant. State v. Miller, 98-0301 (La.9/9/98), 718 So.2d 960, 966. Such evidence has been admitted to show that a defendant "did not act innocently, and will negate any defense that he acted without intent or that the acts were accidental." State v. Jackson, 625 So.2d 146, 150 (La.1993). Therefore, the evidence of "lustful disposition" would only be relevant in determining whether the defendant had the specific intent to commit the crime. State v. Miller, 718 So.2d at 966.
Because the crime of aggravated rape is not a specific intent crime, however, the other crimes evidence is not admissible for this purpose. The only question before the jury was whether penetration occurred. Accordingly, the evidence of other crimes was inadmissible.
Nevertheless, the erroneous admission of other crimes evidence is subject to harmless error review. State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94, 101. Harmless error exists where the guilty verdict actually rendered was surely unattributable to the error. Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993). In light of the victim's testimony regarding defendant's actions, as well as other witnesses' testimony and the defendant's inculpatory statements, we find the jury's verdict in this case was "surely unattributable" to the error.
ASSIGNMENT OF ERROR NO. 3
The trial court erred in failing to give the jury a limiting instruction prior to the admission of other crimes evidence.
Prior to the admission of Detective Sergeant Jones' testimony relating to the defendant's previous crime, the defense asked the trial court to give the jury a limiting instruction. The trial court refused the request at the time, but such an instruction was included in the jury charge presented at the trial's conclusion. The defendant alleges the court erred in refusing to give an immediate limiting instruction.
When evidence of other acts or offenses is admitted before the jury, the court, if requested by defense counsel, shall charge the jury as to the limited purpose for which the evidence is received and is to be considered. State v. Prieur, 277 So.2d 126, 130 (La.1973).
*895 The testimony of the victim here, bolstered by the testimony of his grandmother and the other witnesses, plus the admission of defendant's statement to the parole officer regarding penetration, provided overwhelming support for the State's case. Because the harmless error analysis is applicable to the testimony admitted, we find the fact that the limiting instruction was given later than it should have been could not have contributed to the verdict. See State v. Jones, 94-926 (La.App. 4 Cir. 12/28/94), 648 So.2d 472, 476-477.
ASSIGNMENT OF ERROR NO. 4
The trial court erred in denying appellant's objection to the hearsay evidence of other crimes.
During Detective Sergeant Jones' trial testimony regarding defendant's prior offense, Jones stated that the defendant "inserted his penis in her [the victim's] vagina." The defendant objected. On appeal he argues that this statement was inadmissible hearsay.
Hearsay is an oral or written assertion, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted. La. C.E. arts. 801(A)(1), 801(C). Hearsay evidence is not admissible except as otherwise provided by the Code of Evidence or other legislation. La. C.E. art. 802; State v. Johnson, 98-605 (La.App. 5 Cir. 1/26/99), 728 So.2d 901, 912, writ denied, 99-624 (La.6/25/99), 745 So.2d 1187. Hearsay is excluded because the value of the statement rests on the credibility of the out-of-court asserter, who is not subject to cross-examination and other safeguards of reliability. State v. Martin, 458 So.2d 454, 460 (La.1984).
"A police officer, in explaining his own actions, may refer to statements made to him by other persons involved in the case. Such statements are admitted not to prove the truth of the assertion, but to explain the sequence of events leading to the arrest of the defendant from the viewpoint of the investigating officer." State v. Watson, 449 So.2d 1321, 1328 (La. 1984). Where the officer does not testify to the substance of what another person told him, but to what he did in response to that information, the testimony is not considered hearsay. State v. Smith, 97-1075 (La.App. 5 Cir. 4/15/98), 710 So.2d 1187, 1190.
Here, Detective Sergeant Jones testified to the substance of what she learned, but her statement fell under no exceptions to the hearsay rule. Thus, her testimony was inadmissible hearsay.
However, the admission of such statement is subject to a harmless error analysis. State v. Winfrey, 97-427 (La.App. 5 Cir. 10/28/97), 703 So.2d 63, 78, writ denied, 98-0264 (La.6/19/98), 719 So.2d 481. The appropriate inquiry is "whether the guilty verdict actually rendered in this trial was surely unattributable to the error." Id. Even inadmissible evidence does not require reversal of a conviction if its admission is harmless. State v. Balsar, 625 So.2d 664, 666 (La. App. 5 Cir.1993), writ denied, 93-2799 (La.1/13/94), 631 So.2d 1164.
Factors to be considered in making this determination include: (1) the importance of the witness's testimony; (2) the cumulative nature of the testimony; (3) the existence of corroborating or contradictory evidence regarding the major points of the testimony; (4) the extent of cross-examination permitted; and (5) the overall strength of the state's case.
Id.
Jones testified that the defendant "inserted his penis in her vagina." This testimony regarding the defendant's penetration of the prior victim was not repeated elsewhere in the trial and, therefore, was not cumulative. Accordingly, we conclude the admission of the testimony, viewed in light of all the evidence, was harmless error.

*896 ERROR PATENT REVIEW
The record reveals that, subsequent to sentencing the defendant, the trial court failed to advise the defendant of the delay for post-conviction relief. La. C.Cr.P. art. 930.8. Accordingly, the district court is ordered to send written notice of the amended prescriptive period to defendant within ten days of the rendition of this opinion and to file written proof in the record that defendant received said notice. State v. Stelly, 98-578 (La.App. 5 Cir. 12/16/98), 725 So.2d 562.
We also note that the trial court sentenced the defendant immediately after denying his post-trial motions, in violation of La.C.Cr.P. art. 873, which requires that when a defendant is convicted of a felony, if a motion for new trial is filed a sentence shall not be imposed until at least twenty-four hours after the motion is overruled, unless the defendant expressly waives the delay or pleads guilty. An error in sentencing a defendant without a 24-hour delay is harmless, however, where the defendant neither complains of the sentence nor claims to have been prejudiced by the mistake. State v. Forrest, 95-31 (La.App. 5 Cir. 2/14/96), 670 So.2d 1263, 1272, writ denied, 96-0654 (La.6/28/96), 675 So.2d 1117. Since defendant neither objected below nor raised a sentencing error on appeal, no corrective action is required. State v. Herrera, 98-677 (La.App. 5 Cir. 2/10/99), 729 So.2d 75, 80.
For the foregoing reasons, the conviction and sentence are affirmed. The matter is remanded and the trial court is ordered to notify the defendant of the post conviction deadline, pursuant to the discussion in this opinion.
AFFIRMED AND REMANDED WITH ORDER.
NOTES
[1] La. R.S. 14:42 states, in pertinent part:

A. Aggravated rape is a rape ... where the anal or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
* * *
(4) When the victim is under the age of twelve years. Lack of knowledge of the victim's age shall not be a defense.
Rape is defined in La. R.S. 14:41(A) as "the act of anal or vaginal sexual intercourse with a male or female person committed without the person's lawful consent." Further, "emission is not necessary and any sexual penetration, vaginal or anal, however slight is sufficient to complete the crime." La. R.S. 14:41(B).
[2] The defendant's pretrial motion to suppress was denied by the trial court. Upon application for writs, this Court set aside that ruling, holding that the defendant's statement to his probation officer should be suppressed. State v. Allen Maise, 99-K-24 (La.App. 5 Cir. 1/7/99). Upon the State's application for review our supreme court reinstated the trial court's ruling, noting that the defendant could reurge the issue on appeal in case of conviction. State v. Maise, 99-0051 (La.1/13/99), 735 So.2d 641.
[3] As with the motion to suppress defendant's statement, the trial court ruled in a pretrial hearing that this evidence would be admissible. That determination was overturned by this Court on supervisory review, but our ruling was reversed by the supreme court and the trial court's ruling was reinstated. State v. Allen Maise, 99-K-24 (La.App. 5 Cir. 1/7/99), writ granted, ruling of court of appeal vacated and set aside, 99-0051 (La.1/13/99), 735 So.2d 641.