SUSAN M. CHEHARDY, Chief Judge.
|gOn appeal, defendant challenges the trial court’s ruling allowing the State to introduce other crimes evidence at trial. For the following reasons, we affirm but remand for correction of the uniform commitment order.

Procedural History

On October 1, 2013, the Jefferson Parish District Attorney filed a bill of information charging defendant, Floyd M. Bell, Jr., with one count of possession with intent to distribute a controlled dangerous substance, to wit: cocaine, in violation of La. R.S. 40:967(A).
On December 6, 2013, the State, pursuant to La. C.E. art. 404, filed a notice of intent to introduce evidence of defendant’s prior bad act of possession with intent to distribute cocaine to prove defendant’s “specific intent to distribute” cocaine in this case. On May 8,2014, the court heard argument and determined that the evidence of defendant’s prior bad act was admissible to show intent “in this scenario.”
On May 13, 2014, trial before a twelve-person jury commenced. On May 14, 2014, the jury found defendant guilty of the responsive verdict of attempted possession with intent to distribute cocaine. On June 26, 2014, the trial judge | «sentenced defendant to seven years for attempted possession with intent to distribute cocaine, with the first two years to be served without benefit of probation, parole, or suspension of sentence.
Also, on June 26, 2014, the State filed a multiple offender bill of information alleging defendant was a second felony offender. Defendant stipulated to the multiple bill. Thereafter, the trial judge vacated the sentence on the underlying felony, and, pursuant to La. R.S. 15:529.1, imposed an enhanced sentence of ten years at hard labor without benefit of probation or suspension of sentence, with the first two years without benefit of parole, probation, or suspension of sentence.
On July 10, 2014, defendant timely filed a motion for appeal. This appeal follows.

Facts

At trial, Officer Paul Carmouche of the Kenner Police Department testified that, on August 31, 2013, he was assigned to patrol the area of Taylor Street and Third Street in Kenner. While on patrol in his marked police unit in the early morning hours of August 31, 2013, Officer Car-mouche observed a driver make a right turn without using a turn signal. Officer Carmouche pursued the vehicle and paced the driver travelling at 40 miles-per-hour in a 30 mile-per-hour zone. Based on these traffic violations, Officer Carmouche activated his lights to conduct a traffic stop. The driver immediately complied.
Officer Carmouche approached the vehicle to speak with the driver. When the driver rolled down his window, Officer Carmouche noticed that the driver was shaking and perspiring heavily despite sitting inside the air-conditioned vehicle. The driver also “was way more [nervous] than what would be normal,” which made *237 Officer Carmouehe wary of- the situation. At that ¡point, for safety reasons, the officer asked the driver to step out of thes car.
|4Once Officer Carmouehe had-the1 driver standing at the rear of the vehicle, Officer Carmouehe asked if the driver had “anything illegal” in the car. The driver admitted that he had “Mojo”[1] and crack cocaine in the car. • Officer Carmouehe testified that, at that point, he handcuffed and Mir-cmdized[2] the driver, who was subsequently identified as Floyd M. Bell, Jr, defendant-heréin.
With the defendant restrained, Officer Carmouehe walked with him towards the front of the car and defendant indicated that the contraband was in the ashtray of the vehicle’s center console next to the gear shift. In plain view, Officer Car-mouche observed a bag of “green vegetable matter” and another bag containing “off-white rock-like objects” in the ashtray. He also found a razor and rolling papers. Officer Carmouehe did not notice an odor of smoke emanating from the vehicle. Officer Carmouehe notified a crime scene technician to come to the crime scene, take photographs, and te:st for contraband.
During their wait for the crime scene technician, Officer Carmouehe' took a statement from defendant. In the Voluntary Statement Form, defendant admitted that he had been stopped for speeding on Jefferson Highway and, in his vehicle, he possessed “Mojo” and cocaine for his personal use. Further, during transport from the scene of the traffic stop- to the jail, defendant stated that the contraband that he possessed was not solely for his personal use but he did not want to be charged with intent to distribute.
On cross-examination, Officer . Car-mouche testified that there had been no citizen complaint about defendant selling contraband, nor had he witnessed defendant involved in any hand-to-hand transactions. Officer Carmouehe also testified that he had not found . any weapons on defendant or in his car. Further, | ^Officer Carmouehe did not investigate defendant’s cell phone logs or observe a scale, baggies, or other paraphernalia typically associated with drug distribution within defendant’s possession.
At the scene, the crime scene technician analyzed the “off-white rock-like” substance, which field-tested positive for cocaine and weighed 4.4 grams. The “green vegetable matter” did not test positive for marijuana, which was. expected as it was “synthetic marijuana.” Defendant and the State jointly stipulated that during intake at Kenner lockup on the night of the alleged offense, defendant had $42.00 on his person — one $20 bill, one $10 bill, two $5 bills, and two $1 bills.
Marcelle Folse was qualified as an expert in the examination and analysis of controlled dangerous substances. Ms. Folse testified her analysis of the “off-white rock-like” substance was positive for cocaine, and the “green vegetable matter” was positive for synthetic marijuana. Ms. Folse testified that the final weight she recorded was 3.97 grams, but it is policy to round down to the nearest gram.
■ Further, the- State, without objection by defense counsel, introduced evidence of defendant’s prior conviction in 2000 for simple possession of cocaine. Officer Christopher Mitchell of the Kenner Police *238 Department was one of the arresting officers in' that case. Officer Mitchell was working in narcotics during October of 2000, when he and his partner approached defendant in relation to a- prior narcotics investigation. As they approached, defendant fled on foot,--and the officers gave chase.- During’ the foot chase, defendant discarded a clear plastic bag containing “off-white rock-like objects” Officer Mitchell testified that he stopped to collect the evidence while his partner proceeded to catch defendant, and defendant-whs placed under arrest. Officer Mitchell testified that tho bag contained 16 individual rocks with a gross weight of 3.3 grams, and the substance field-tested positive for cocaine.
I «Milton Dureau was accepted as an expert for the State in the field of the analysis of controlled dangerous substances. Mr. Dureau testified that one of the employees that he supervised tested the sample obtairied in defendant’s October 2000 arrest. He stated that the substance tested positive for cocaine, and .the gross weight of the sample in that case was 8 grams.
Sergeant Elvin Módica of the Jefferson Parish Sheriffs Office Was admitted as an expert in narcotics distribution, quantity, packaging, and value of narcotics. Sergeant Módica testified that, when determining whether to book an offender with possession or possession with intent to distribute, they consider factors including the quantity of the controlled dangerous substance; the packaging and.other paraphernalia associated with using versus distribution, and the overall value of the narcotics. Sergeant Módica stated that paraphernalia typically associated with distribution would include cutting agents, bags, scales, baking powder, cookware, and phones with logs suggesting sales activity.
Sergeant Módica detailed how “crack” or “cocaine base” can be ingested. He related- that crack can only be smoked, but that one could smoke it in numerous ways, including in a pipe, an aluminum can, a cigarette, or a ,cigar. He explained that rolling papers are typically used for marijuana or synthetic marijuana, and the razor blade could be used to.break down a large quantity of any drug into a smaller quantity. He continued that it was rare to find a user who smoked crack mixed with synthetic marijuana because the form is not as pure as smoking crack alone, and “a lot of the vapors would be lost smoking it that way.”
Sergeant Módica testified that 3.9 grams of cocaine would yield about twenty rocks, and each of those, rocks could be sold for about twenty dollars each. Therefore, the value of the cocaine found on defendant would be about $380,00. He went on to say that a typical user purchases one rock at a time. If a user |?happened to have a little more money, he might buy about five rocks for $100.00. The substance in the form the officers found it in would be worth $180,00 to $200.00. If it were to be broken down into individual rocks to be sold, it would be worth more.
Sergeant Módica stated that the cocaine in the present ease was not ready for sale, but, if prepared for sale, would yield about twenty “hits.” He continued that this quantity was not typical for personal use. He then went on.to say that a user with .a bad habit could consume twenty rocks in a, day or two, but typically users would not keep that many rocks, on them .because they would go through it tpo quickly.
Sergeant Módica then opined -as to the October 2000 ease that the gross weight of 3 grams found in that ease could be broken into 15 rocks and sold for about $800.00 to $400.00. Sergeant Módica noted that the cocaine in the 2000 ease was prepared for *239 sale but it would be a relatively fast process to cut the cocaine found in the 2013 case into rocks for resale. Sergeant Módi-ca went on to say lower-level, street dealers might only have drugs and money with them, not scales or other paraphernalia.
Defendant then testified on his own behalf that he had been convicted previously of simple possession of cocaine, illegal carrying of a weapon while in possession of crack cocaine, and possession of marijuana. Defendant related he had pled guilty in all of those cases because he was guilty.
Defendant admitted to owning the cocaine, “Mojo,” and other paraphernalia recovered from his vehicle, which were for his personal use. He stated that he had bought it . earlier that day, Defendant ingested the crack by cutting off a little, mixing it with “Mojo” in a rolled cigarette and smoking it. He pointed out in the crime scene photos that there was a “roach” in the ashtray of his vehicle that night.
^Defendant asserted that he used his turn signal and had been stopped at a, red-light and, therefore, could not have been speeding when the officer pulled him over. Instead, defendant testified that the officer stated he had pulled him over for not having a license plate even though he had a valid temporary tag. According to defendant, Officer Scott made suggestive comments about defendant’s luxury vehicle.
Defendant testified that the officers searched his car without “probable cause,” and his -contraband was not in plain view, because the ashtray was closed. Defendant testified that he never made a statement, and he could not see the form that Officer Carmouche prepared for him to sign because it was nighttime. Defendant stated that he refused to sign the statement until Officer Carmouche threatened to “charge” him with possession with intent to distribute. He reiterated that the crack -was for his- own personal use and that he had never sold it.
Based on the testimony and evidence presented, the twelve-person jury found' defendant guilty of the responsive verdict of attempted possession with intent to distribute cocaine. Defendant appeals his conviction.

Law and Argument

On appeal, defendant’s sole assignment, of error challenges the trial court’s grant of the State’s 404(B) motion, which allowed the State to introduce evidence of his prior bad act. Specifically, defendant .argues that the'other crimes evidence in this case, which included proof that he. had been accused óf a similar crime, was so prejudicial and confusing to the jury that he did not receive a fair trial.
La. O.E. art. 404(B)(1) provides:
Except as provided in Article 412, evidence of other crimes* wrongs, or. acts is not admissible-to .prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or |naccident, provided that upon request by the accused, the prosecution- in a criminal case shall provide reasonable notice in- advance .of trial, of the nature ■ -of any such evidence it intends to introduce at trial for such purposes, or when ⅜ relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding. :
In State v. Maise, 99-734, pp. 12-13 (La.App. 5 Clr. 3/22/00), 759 So.2d 884, 893-94, this Court enumerated the re-, quirements that must be met before other crimes evidence may be admitted. First, *240 one of the factors enumerated in La. C.E. art. 404(B)(1) must be at issue, have some independent relevance, or be an element of the crime charged in order for the evidence to be admissible.. Maise, supra (citing State v. Jackson, 625 So.2d 146, 149 (La.1993)). Second, the State must prove that the defendant committed the other acts by a preponderance of the evidence. Maise, supra (citing Huddleston v. United States, 485 U.S. 681, 685, 108 S.Ct. 1496, 1499, 99 L.Ed.2d 771 (1988); State v. Hernandez, 98-448 (La.App. 5 Cir. 5/19/99), 735 So.2d 888, 898-99, writ denied, 99-1688 (La.11/12/99), 750 So.2d 194).
Third, the requirements for admission of such eyidence set forth in State v. Prieur, 277 So.2d 126,130 (La.1973), must be met. The State must, within a reasonable time before trial, furnish to the defendant a written statement of the acts or offenses it intends to offer, describing the same with the general particularity required of an indictment or information. In the written statement, the State must specify the exception to the general exclusionary rule upon which it relies for the admissibility of the evidence of other acts or offenses. A prerequisite for admissibility is a showing by the State that the evidence serves the actual purpose for which it is offered and not for depicting the defendant as having bad character or the propensity for bad behavior. When the defense requests a limiting | ^instruction before the evidence is admitted before the-jury, the court shall give such an instruction. Id.
Furthermore, a final charge to the jury shall contain instructions about the limited purpose for which the evidence was received and that the defendant cannot be convicted for any charge other than the charge at hand. Maise, supra. Finally, the probative value of such evidence must be weighed against its prejudicial effect. Maise, supra (citing State v. Lisotta, 97-406 (La.App, 5 Cir. 2/25/98), 712 So.2d 527, 530).
The burden is on the defendant to show that he was prejudiced by the trial court’s admission of Prieur evidence. State v. Temple, 01-655 (La.App. 5 Cir. 12/12/01), 806 So.2d 697, 709, writ denied, 02-0234 (La.1/31/03), 836 So.2d 58. Absent an abuse of discretion, a trial court’s ruling on the admissibility of evidence pursuant to La. C.E. art. 404(B)(1) will not be' disturbed. State v. Williams, 02-645 (La.App. 5 Cir. 11/26/02), 833 So.2d 497, 507, writ denied, 02-3182 (La.4/25/03), 842 So.2d 398.
In the instant case, defendant does not assert that the State failed to prove the facts pertaining to defendant’s prior conviction for possession of cocaine nor does he claim that the State failed to provide the requisite notice of its intent to introduce these facts at trial as required by La. C.E. art. 404(B)(1). Defendant instead contends that the State failed to show that facts of his prior conviction have independent relevance and also argues that the prejudicial effect of the evidence outweighed its probative value.
In this case, defendant'was charged with possession with intent to distribute cocaine, which requirés proof that the defendant knowingly and intentionally possessed the drug and that he did so with the specific intent to distribute it. La. R.S. 40:967(A); State v. Snavely, 99-1223 (La.App. 5 Cir. 4/12/00), 759 So.2d, 950, 958, writ denied, 00-1439 (La.2/16/01), 785 So.2d 840. As argued by the State in its 404(B) motion, intent is an essential element of the crime of possession with intent to distribute, .and, as such, this Court, in numerous eases, has found that previous attempts to distribute may be considered in establishing intent. State v. Carey, 07-674 (La.App. 5 Cir. 12/27/07), 975 So.2d 27, 29; State v. Quest, 00-205 (La.App. 5 Cir. *241 10/18/00), 772 So.2d 772, 786, writ denied, 00-3137 (La.11/2/01), 800 So.2d 866; State v. White, 98-91 (La.App. 5 Cir. 6/30/98), 715 So.2d 714, 717, writ denied, 98-2043 (La.11/25/98), 729 So.2d 577; State v. Bannister, 95-172 (La.App. 5 Cir. 6/28/95), 658 So.2d 16, 18.
Here, Sergeant Modiea, who was accepted as an expert in- narcotics distribution, quantity, packaging, and value, testified that, in the-2000 case, the 3 grams of cocaine possessed by defendant were broken into 15 rocks and prepared for sale. Sergeant Modiea further'testified that, if sold, 15 rocks could net $300.00 to $400.00. That testimony regarding prior attempts to distribute narcotics by defendant was relevant to establish the element of intent in the present case. Based on the foregoing, we find that the other crimes evidence at issue had an independent relevance to show intent pertaining to the current offense, and was, therefore, admissible for this purpose under La. C.E. art. -404(B)(1).
Defendant next argues that the probative value of the evidence of the facts surrounding defendant’s prior conviction was outweighed, by its prejudicial effect and that the admission of the evidence caused jury confusion which prevented a fair trial. Specifically, defendant asserts that the purpose and effect of the other crimes evidence in this case was merely-to suggest his criminal disposition and that the jury was more likely to determine the question of intent based on a fourteen-year-old case than the facts at hand.
112This Court considered a similar issue in Temple, supra. In that case, the defendant argued that the admission of evidence of his' previous involvement with' drug deals was outweighed by its prejudicial effect because the evidence “unduly swayed the jury in its determination of guilt because the jury viewed defendant as a ‘bad’ person.” The defendant further argued that the other crimes evidence “confused-the jury and was a collateral issue which distracted the jury’s attention from the main issue.” Id. This Court found these scenarios unlikely based upon the limiting instruction given by the trial judge immediately preceding the presentation of other crimes evidence. Temple, 01-655, 806 So.2d at 709.
According ,to Prieur, at the request of the defendant, the court shall give a limiting instruction to the jury as to the limited purpose of the other crimes evidence before, such evidence-is introduced. Prieur, 277 So.2d at 130. This instruction is distinguishable and separate from the required .limiting instruction to be given to the jury before deliberation. Id.
Here, defendant requested a limiting instruction before trial began but failed to request the limiting instruction or object to the trial judge’s failure to instruct the jury immediately before the State’s witnesses ■ testified about the prior crime. The record reflects that there was a general instruction regarding other crimes evidence presented during the jury charges.
In order to preserve the right to seek appellate review of an alleged trial court error, the party claiming the error must state an objection contemporaneously with the occurrence of the alleged error, as well as the grounds for that objection^ La. C.Cr.P. art. 841A; State v. Berroa-Reyes, 12-581 (La.App. 5 Cir. 1/30/13), 109 So.3d 487, 498; State v. Richoux, 11-1112 (La.App. 5 Cir. 9/11/12), 101 So.3d 483, 490-491, writ denied, 12-2215 (La.4/1/13), 110 So.3d 139; State v. Alvarez, 10-925 (La.App. 5 Cir. 6/29/11), 71 So.3d 1079, 1085. Defendant is limited on |1Happeal to matters to which an objection was made, but also to the grounds for his objection articulated at trial. State v. Jackson, 450 So.2d 621 (La.1984); State v. Baker, 582 So.2d *242 1320 (La.App. 4 Cir.1991), writ denied, 590 So.2d 1197 (La.1992), cert. denied, 506 U.S. 818, 113 S.Ct. 62, 121 L.Ed.2d 30 (1992).
The purpose of the requirement of a contemporaneous objection is to put the trial judge on notice of an alleged irregularity so that he or she may cure a. legitimate problem and prevent the defendant from gambling for a favorable verdict and then resorting to appeal on errors that might easily have been corrected by an objection. State v. Styles, 96-897 (La.App. 5 Cir. 3/25/97), 692 So.2d 1222, 1228, writ denied, 97-1069 (La.10/13/97), 703 So.2d 609. A contemporaneous objection allows opposing counsel to reply or to correct the problem, and may also prevent the errbr entirely. In this case, defendant’s assent to admission of the testimony and the lack of any objection precluded the trial judge’s contemporaneous consideration of whether to issue a limiting instruction before and after the testifying, witnesses. State v. Patin, 13-618 (La.App. 5 Cir. 09/24/14), 150 So.3d 435, 441-42. We find that defendant failed to preserve his right to appeal any alleged issue of undue prejudice arising frota the lack of a limiting instruction, Based on the foregoing* we decline to address this assignment of error.
Furthermore, even if we were to address the. merits of this matter, we would not grant relief. In State v. Maise, 00-1158, pp. 15-16 (La.1/15/02), 805 So.2d 1141, 1152, the supreme court affirmed this Court’s determination that the trial court’s failure to give a limiting instruction before one of the witnesses’ testimony about the defendant’s prior conviction was a trial error. subject to harmless error analysis. In Maise, this Court found that the other evidence concerning the prior crime admitted without objection, along with the limiting instruction given to the I injury before deliberation prevented this specific procedural error from contributing to the defendant’s conviction.
In light of Temple and Maise, we find that in the present case, Prieur was substantially' followed, and the limiting instruction before deliberations cured the procedural error of the trial court not giving a limiting instruction at the time the State’s evidence was introduced.
Based upon the foregoing, we find no error in the trial court’s ruling allowing other crimes evidence to be admitted at trial. This assignment of error lacks merit. ...

Errors patent

Finally, pursuant to La. C.Cr.P. art. 92.0, we have reviewed the record for errors patent and found one that requires correction, On August 4, 2014, the trial judge issued a Nunc Pro ,Tunc minute entry replacing the Hard Labor Commitment of June 26, 2014. That same day, the trial judge issued a second State of Louisiana Uniform Commitment Order, which super-cedes the original. In the second Uniform Commitment Order, the adjudication date, which was May 14, 2014, is incorrectly listed as “6/26/14,” which was the date of sentencing.
In order to ensure an accurate record, we remand 'this matter for correction of the Uniform Commitment Order to reflect the correct adjudication 'date of May 14, 2014. See State v. Long, 12-184 (La.App. 5 Cir. 12/11/12), 106 So.3d 1136, 1142. Further, we direct the Clerk of Court for the 24th Judicial District Court to transmit the original of the corrected Uniform Commitment Order to the officer in charge of the institution to which defendant has been sentenced and ¡to the Department of Corrections’ Legal Department. La. C.Cr.P. art. 892(B)(2); State ex rel Roland v. State, 06-0244 (La.9/15/06), 937 So.2d 846.

*243
11f,Conclusion

For the foregoing reasons, defendant’s conviction is affirmed but this matter is remanded for correction of the State of Louisiana Uniform Commitment Order as mandated by La. C.Cr.P, art. 892(B)(2); State ex rel. Roland v. State, supra; and State v. Long, 12-184 (La.App. 5 Cir. 12/11/12), 106 So.3d 1136, 1142.

AFFIRMED: REMANDED FOR CORRECTION OF COMMITMENT

. "Mojo” is. the street name for synthetic can-nabinoids, commonly referred to as "synthetic marijuana.”

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Officer Car-mouche executed a formal Advice of Rights form with defendant at the jail, per the Ken-ner Police Department's policy.