932 So.2d 701 (2006)
STATE of Louisiana
v.
Courtney MOSES.
No. 05-KA-787.
Court of Appeal of Louisiana, Fifth Circuit.
May 9, 2006.
*704 Harry J. Morel, Jr., Kim McElwee, Assistant District Attorney, St. Charles Parish District Attorney, Hahnville, Louisiana, for Plaintiff/Appellee.
Bruce G. Whittaker, Louisiana Appellate Project, New Orleans, Louisiana, for Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., SUSAN M. CHEHARDY, and FREDERICKA HOMBERG WICKER.
FREDERICKA HOMBERG WICKER, Judge.
Defendant, Courtney Moses, appeals his conviction and sentence on charges of attempted armed robbery in violation of La. R.S. 14:27:64 and aggravated battery in violation of La. R.S. 14:34. For the reasons that follow, we affirm.
On June 5, 1996, the St. Charles Parish District Attorney's Office filed a bill of information in case number 96-372 against *705 the defendant, Courtney Moses, charging him with two counts of attempted armed robbery, violations of La. R.S. 14:27:64. On February 28, 1997, the State amended the bill of information to add count three charging the defendant with attempted first degree murder while engaged in the perpetration or attempted perpetration of a felony, a violation of La. R.S. 14:27:30. The defendant pled not guilty to all charges. On June 24, 1997[1], the State amended count three of the bill to charge the defendant with attempted second degree murder with specific intent to kill, a violation of La. R.S. 14:27:30.1(A)(1).[2] After a three-day trial, the defendant was found guilty as charged in count one of attempted armed robbery, not guilty in count two of attempted armed robbery, and guilty in count three of a responsive verdict of aggravated battery. On September 17, 1997, the defendant was sentenced to thirty-six years, at hard labor, without benefit of parole, probation, or suspension of sentence with credit for time served, for his attempted armed robbery conviction and to eight years, at hard labor, for his aggravated battery conviction, with credit for time served to run concurrently with his sentence on the attempted armed robbery conviction. The trial court also found defendant ineligible for diminution or reduction of sentence for good behavior because he committed crimes of violence.
Before considering the merits, we will address the timeliness of defendant's appeal, as it pertains to this court's jurisdiction. On its face, the appeal appears untimely.
After his sentencing, defendant retained new counsel who, on July 27, 1998, approximately ten months after sentencing, filed a motion for an out-of-time appeal alleging that trial counsel was ineffective in failing to file a notice of appeal. The trial court granted the motion. Appellate defense counsel took no further action. Service on appellate defense counsel was attempted unsuccessfully. Thereafter, on January 19, 1999, the defendant's appeal was dismissed, at the request of the Clerk of Court, for failure to pay costs. At the time he dismissed the appeal, the trial judge stated he would reconsider the dismissal of the appeal, as the defense counsel had not received proper service.
On April 19, 2004, defendant filed a pro se Application for Post-Conviction Relief, Writ of Habeus Corpus, in which he requested an out-of-time appeal. On February 24, 2005, after a hearing, the trial court granted the defendant's out-of-time appeal, to which the State did not object.
Generally, once the delays for appeal have lapsed, the defendant's conviction and sentence become final and are not subject to review by ordinary appellate process. State v. Orgeron, 97-1054 (La. App. 5 Cir. 3/11/98), 708 So.2d 1242, 1243. The defendant must then seek reinstatement of his right to appeal through an application for post-conviction relief to the district court within the statutory period allowed. Id. At the time the defendant committed the offense and was convicted, no application for post conviction relief, including applications which sought an out-of-time appeal, were to be considered if filed more than three years after the judgment of conviction and sentence became final. La.C.Cr. P. art. 930.1.
*706 Although defendant's application appears to be untimely on its face, we find the application is in fact timely. We find the July 27, 1998 motion for out-of-time appeal may be treated as a timely application for post-conviction relief which resulted in the granting of an out-of-time appeal.[3] Since the trial court stated it would reconsider the dismissal of the July 27, 1998 appeal, the defendant's April 19, 2004 Application for Post-Conviction Relief may properly be treated as a motion to reconsider the dismissal and a supplementation of a prior Application for Post-Conviction relief, and therefore, timely. Id. In State v. Sampson, 02-909 (La.2/14/03), 841 So.2d 747, the Louisiana Supreme Court found that regardless of the words used in its order, a district court can act within its discretion when it in effect orders supplementation of a timely-filed application for post-conviction relief, even if the supplementation does not arrive until after the expiration of the prescriptive period. Finally, the State did not object to the out-of-time appeal, nor has the State challenged the present appeal as untimely.
Accordingly, we find that the grant of the subsequent pro-se application for post-conviction relief constitutes a reconsideration of the trial court's dismissal of a timely filed application for post-conviction relief.

Facts
At trial, Joyce Woodruff ("Joyce") and David Woodruff ("David") testified that on May 11, 1996, in St. Charles Parish, Joyce was driving their car home with David as a passenger. While driving, a tan, beige Mustang driven by a black male turned onto the road and appeared to swerve into their lane. Joyce blew her horn. The driver of the Mustang then followed them right on their bumper. When they arrived home, they waited in the car for a minute or two, and then started to get out. Joyce got out first and walked around the front of the car. After she got out of the car, she saw the black male in her yard. She looked away, and when she looked back, he was two or three feet away from her with a gun pointed in her face. He yelled, "Give me your wallet." She yelled "No", and pushed the gun away. The gun went off in her hand, and then he ran away. She had no doubt that he tried to kill her. The Woodruffs' neighbor, Kenneth Shipley, asked if they were all right, and Joyce told him that she had been shot in the hand, and asked him to call 911. According to the Woodruffs, the bullet pulverized three-quarters of the major bone in Joyce's hand, and fractured in half the remaining quarter of the bone. All of the nerves and tendons in that part of her hand were also damaged.
While in the hospital, Joyce identified the defendant in a photographic lineup as the man who shot her. She stated she was absolutely certain that the man depicted in the photo was the person who shot her. In addition, Joyce and David both identified the defendant, in the courtroom, as the man who attempted to rob them and shot Joyce.
Kenneth Shipley, a neighbor of the victims, testified that he was outside on the steps of his trailer when he heard some vehicles coming down Lussan Lane. He saw the Woodruffs' car and a Mustang *707 tailgating behind it. The Woodruffs pulled into their driveway and the Mustang went past their house, but he could hear the exhaust of the Mustang as it turned towards his house. He described the Mustang as an early 80s model with black trim molding down the side with a black grille; it had something hanging from the mirror, and either a missing or a dirty hubcap. Mr. Shipley also stated that the vehicle made a "unique sound," because it had an exhaust problem. When he heard gunfire, he ran down the side of the house and he looked in the backyard. He saw David struggling up the back steps. He called 911, and said that his neighbor, Joyce, had been shot.
Detective Allen Wall, a detective with the St. Charles Parish Sheriff's Office, testified that, on May 11, 1996, he investigated an attempted armed robbery and a shooting at the Woodruffs' residence, in Luling, Louisiana. He spoke with Mr. Shipley and David Woodruff that evening, who gave him similar descriptions of the car that followed the Woodruffs. A vehicle fitting that description was later located at 239 Allen Street in Ama, Louisiana. Detective Wall later learned the owner of the vehicle was Anitra Harris. Ms. Harris gave permission for her car to be searched. The vehicle was started to ascertain if it made a unique sound. Mr. Shipley was present when the vehicle was started, and he identified the vehicle by both sight and its unique sound. Detective Wall testified that he could tell the car was recently used by the dew marks on the grass, and the lack of dew on the windows. David Woodruff was brought to the location and identified the vehicle; he also identified Courtney Moses, who was present on the scene. Detective Wall then advised Courtney Moses of his rights and placed him under arrest. The police never found the gun and the gunshot residue test on the defendant was inconclusive.
Courtney Michael Moses, the defendant, testified that on the night of May 11, 1996, he was at the home of Glenn Singleton, Sr. watching movies with some family and friends, and his girlfriend, Anitra Harris. When the police arrived, he went to the car to find out what was happening. He denied being in the car that night. However, he admitted that he normally drives Ms. Harris' car, and that the car makes a different sound, like something is wrong with it. The defendant denied knowing the Woodruffs or being involved in the crime alleged.

Assignments of Error

First Assignment of Error: Denial of a Mistrial
The defendant argues the trial court erred in denying his motion for a mistrial for two reasons: first, because the trial judge interjected himself during the trial, thereby abandoning his neutral role and appearing as an advocate for the State; second, because the trial judge incorrectly ruled on hearsay objections and therefore, allowed hearsay testimony to be admitted.
The defendant alleges that the trial judge interjected himself into the trial on three occasions: (1) by suggesting to the State, at a bench conference, exceptions through which hearsay testimony objected to would be admissible; (2) by stating at a bench conference he would not "carte blanche" say no hearsay statements; (3) by questioning a state witness during direct examination.
First, we will address the trial judge's conduct during bench conference. During a bench conference, in response to a defense objection, the trial judge suggested that the proper hearsay exception to the objected to testimony was under Louisiana Code of Evidence article 803(1), present sense impression. Further, during the *708 same bench conference discussing possible exceptions, the trial judge stated he was "not going to `carte blanche' say no hearsay statements". Defendant argues these comments reveal the trial judge had abandoned his role as a neutral referee for the role of advocate on the side of the State. Defendant further argues that the comments may have suggested to the jury the judge's opinion on defendant's guilt or his defense.
A judge may not comment on the facts of the case or give opinion as to the case in the presence of the jury. La.C.Cr. P. art. 772. However, La. C. Cr. P. art. 772 does not apply to "statements of the trial judge's reasons for rulings on objections relating to the admissibility of evidence or to explain the purpose for which evidence is offered or admitted, provided the remarks are not unfair or prejudicial to the defendant . . ." State v. Hubbard, 97-916 (La.App. 5 Cir. 1/27/98), 708 So.2d 1099, 1105, citing State v. Gabriel, 542 So.2d 528 (La.App. 5 Cir.1989), writ denied, 558 So.2d 566 (La.1990). Further, La. C. Cr. P. article 772 does not apply to bench conferences because they are not conducted in the presence of the jury so as to influence the jury's determination of the case. Id. Moreover, comments made by the trial judge that may reveal criticism of the defense counsel do not constitute a reversible error when they are not made in the presence of the jury, therefore not influencing the verdict. Id at 1106.
In the instant case, the judge's suggestions of possible exceptions to hearsay testimony are not considered error because they relate to the judge's ruling and reasoning on objections to admitting testimony, and therefore, La.C.Cr. P. art. 772 does not apply. Further, the suggestions were made at a bench conference and were not prejudicial to the defendant; therefore, the trial judge did not err in suggesting possible hearsay exceptions at a bench conference.
The judge's comment that he would not issue a "carte blanche" ruling on hearsay statements is also not in error. Rather, the comment only restated the proper trial procedure, requiring a trial judge to rule on the admission of testimony after trial counsel objects and states specific grounds for that objection. La. C.E. art. 103. Accordingly, we find the trial judge's actions were proper.
We will next consider the issue of the trial judge asking a state witness questions. La.C.Cr.P. art. 772 states that "[t]he judge in the presence of the jury shall not comment upon the facts of the case, either by commenting upon or recapitulating the evidence, repeating the testimony of any witness, or giving an opinion as to what has been proved, not proved, or refuted." In State v. Williams, 375 So.2d 1379, 1381-1382 (La.1979), the Louisiana Supreme Court explained the no-judge comment rule in La.C.Cr.P. art. 772:
The no-comment rule does not bar a trial judge from asking clarifying questions in the presence of the jury; nevertheless, in the exercise of this power, the judge's questioning must be cautiously guarded so as not to constitute an implied comment. State v. Nicholas, 359 So.2d 965 (La.1978). The judge may even question a witness as to a material matter which has been omitted, providing he does so in an impartial manner and conducts his examination in such a way that he does not indicate his opinion on the merits or any doubt as to the credibility of the witness. State v. Groves, 311 So.2d 230 (La.1975). See, generally, Joseph, Work of the Appellate Courts in 1974-75 Criminal Trial Procedure, 36 La.L.Rev. 605, 624-26 (1976).

*709 However (whatever its wisdom), the legislative imposition of the no-comment rule represents a considered determination that the trial judge's role is essentially as an impartial umpire in an adversary trial, rather than as an active participant in the development or presentation of evidence. Therefore, as we warned in State v. Wagster, 361 So.2d 849, 856 (La.1978):
"* * * (Q)uestioning of witnesses in a criminal jury trial by the judge is a practice to be avoided unless deemed indispensible to a fair and impartial trial. A judge should be constantly aware of the basic premise of a criminal trial which calls upon the State, not the judge, to prove the defendant's guilt beyond a reasonable doubt. It is enough for the judge to impartially and wisely regulate the conduct of the trial without participating in the interrogation of witnesses, a practice fraught with danger of prejudice to the defendant."
Therefore, a trial judge may ask clarifying questions but must be cautious in questioning a witness, so as not to imply comment on the facts. La.C.Cr.P. art. 772; State v. Burrell, 561 So.2d 692, 702 (La.1990).
The trial court questioned Detective Wall twice in response to defense objections:
DET. WALL:
I walked next door. I was also talking to Mr. Shipley at that time. Mr. Shipley was explaining to me what 
MR. MARINO:
Objection, Your Honor, as far as the hearsay nature of what Mr. Shipley said. It's hearsay. Now, the exception 
MR. AUTHEMENT:
He's right. Detective Wall, just testify as to what you learned, what you observed during your investigation. Don't say what you were told by someone else.
THE COURT:
How soon after the event did this happen did he tell you this?
DET. WALL:
This is immediately upon my arrival, Judge, within like, what, 20 minutes.
THE COURT:
The objection's overruled. Proceed.
____________________
MR. AUTHEMENT:
Approximately how far from David Woodruff was Courtney Moses at the time he made the identification?
DET. WALL:
At the most a car length.
MR. AUTHEMENT:
Was there any doubt in his mind?
DET. WALL:
None whatsoever.
MR. MARINO:
Objection, Your Honor. I'm going to object for [sic] the nature of the question. How can the Detective state what was in the mind of the individual?
MR. AUTHEMENT:
Because, Your Honor, 
THE COURT:
Wait, wait. I don't understand the objection.
MR. MARINO:
He's asking him 
THE COURT:
No. You have to give  You have to label the objection so that I can look it up. What's the objection?
MR. MARINO:
The hearsay nature of the statement, Your Honor; and it's beyond his ability to be able to testify what's in someone's mind.

*710 THE COURT:

Detective Wall, did you hear him say anything, or are you guessing at what was in his mind?
THE WITNESS:
He answered my direct question, sir.
THE COURT:
Okay. It's overruled. Answer the question.
MR. MARINO:
Your Honor, may we approach the Bench?
THE COURT:
Yes.
(On-the-Record Bench conference held.)
MR. MARINO:
At this point I'd like to move for a mistrial, because of the Court's questioning of the State's witness. At this particular point and time, it's highly improper, and I'm just going to make that motion.
THE COURT:
Okay. The Motion is denied.
(On-the-Record Bench conference concluded.)
While questioning of witnesses in a criminal jury trial by the judge is a practice to be avoided and a judge should constantly be aware of the basic premise of a criminal trial which calls upon the State, not the judge, to prove the defendant's guilt beyond a reasonable doubt, in the instant case, the trial court's questions did not imply comment or an opinion as to the defendant's guilt or innocence or the witness' credibility. State v. Wagster, 361 So.2d 849 (La.1978). The trial court questioned Detective Wall to clarify the testimony sought and to rule on defense counsel's objections. Therefore, the trial judge did not abuse his discretion in denying a mistrial based on defendant's objections to his questioning a state witness.
We will now consider the trial judge's rulings on hearsay objections. Hearsay is "a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." It may be oral or written. La. C.E. art. 801(A)(1)(C). Hearsay evidence is not admissible, except as provided by the Louisiana Code of Evidence or other legislation. La. C.E. art. 802, State v. Dyer, 00-1866 (La.App. 5 Cir. 4/24/01), 794 So.2d 1, 12, writ denied, 01-1579 (La.6/27/03), 847 So.2d 1256.
The defendant objected to several questions asked of Detective Allen Wall. Specifically, Detective Wall testified as to the description of the car, which he learned through an interview with Mr. Shipley, the neighbor:
MR. AUTHEMENT:
Can you relate to the jury what you learned through your investigation concerning the vehicle?
DET. WALL:
The vehicle was described as being an older model Mustang.
MR. MARINO:
Your Honor, I want to make an objection. I'm going to make an objection as far as the hearsay nature of this particular statement under Code of Evidence art. 801.
(On-the Record Bench Conference held)
THE COURT:
. . . The objection's overruled. For the record, this court find's it's an exception under 803(1), present sense impression.
MR. AUTHEMENT:
And in response to that second BOLO, did your investigation lead you to a vehicle fitting that description?
DET. WALL:

*711 Yes, Sir.
Defendant objected to the testimony as hearsay and the State responded stating that the information was part of his investigation and was admissible. After learning that Detective Wall conducted the interview approximately twenty minutes after the shooting, the trial judge overruled defendant's objection stating the testimony fell under the exception of hearsay in La. C.E. art. 803(1), present sense impression. Present sense impression is an exception to the hearsay rule wherein the statement describing or explaining an event or condition was made while the declarant was perceiving the event or condition or immediately thereafter. La. C.E. Art. 803(1). In State v. Ditcharo, 98-1374 (La.App. 5 Cir. 7/27/99), 739 So.2d 957, 963, writ denied, 99-2551 (La.2/18/00), 754 So.2d 964, this Court found that an officer's testimony was admissible as a present sense impression exception to the general rule against admitting hearsay, as provided for in La. C.E. art. 803(1). There the victim testified that she gave a statement to the police five minutes after she was stabbed. The officer testified that the victim was still shaken up and her hand was quite bloody. The victim told him that she had just jumped from the defendant's car. In State v. Jones, 98-1055 (La.App. 5 Cir. 2/23/99), 729 So.2d 95, 98, citing Buckbee v. United Gas Pipe Line Co., Inc., 561 So.2d 76 (La.1990), this Court noted that the Louisiana Supreme Court previously explained a present sense impression exception to the general rule against admitting hearsay, finding, "[t]he statement may follow `immediately' after perceiving an event, allowing only for `the time needed for translating observation into speech.'" Mr. Shipley's statement to Detective Wall did not constitute a present sense impression because it was not made immediately after the event, allowing only the time needed to translate observation into speech. However, Mr. Shipley's statement that evening may have been admissible to show the sequence of events leading to the defendant's arrest.
A police officer's testimony may include information provided by another individual without constituting hearsay, if it is offered to explain the course of the investigation and the sequence of events leading to the defendant's arrest. State v. Cho, 02-274 (La.App. 5 Cir. 10/29/02), 831 So.2d 433, 447, writ denied, 02-2874 (La.4/4/03), 840 So.2d 1213. Such statements are admitted not to prove the truth of the assertion, but rather to explain from the investigating officer's point of view the sequence of events leading to the arrest of the defendant. State v. Maise, 99-734 (La.App. 5 Cir. 3/22/00), 759 So.2d 884, 895. The testimony is not considered hearsay when the officer does not testify to the substance of what was told to him by another person, but rather what he did in response to that information. Id. However, "admission of information received by a police officer in the investigation of a crime, on the basis that such information explains the officer's presence and conduct and therefore does not constitute hearsay evidence, is an area of widespread abuse." State v. Wille, 559 So.2d 1321, 1331 (La. 1990), citing McCormick on Evidence § 249 (E. Cleary 3d ed.1984). While the out-of-court statement may be relevant to the investigating officer's conduct, and the defendant's subsequent arrest, the testimony may not be used as an indirect method of bringing before the jury the substance of an out-of-court assertion of the defendant's guilt that would otherwise be barred by hearsay. State v. Broadway, 96-2659 (La.10/19/99), 753 So.2d 801, 809.
Out-of-court statements made to investigating officers may have both an *712 impermissible hearsay aspect and a permissible nonhearsay aspect. In such cases, the court should then examine the relevancy of the statement, its prejudicial effect, and whether it was made under oath and subject to cross-examination at trial. State v. Wille, 559 So.2d at 1331. In the instant case, Mr. Shipley's testimony regarding the identification of the vehicle involved would be permissible hearsay testimony because the statement describes Detective Wall's reasoning for his conduct in later locating the defendant's vehicle. Further, the statement does not speak to the guilt or innocence of the defendant, merely to the description of the vehicle involved. Moreover, Mr. Shipley also testified to the same description of the car and was subject to cross-examination, rendering any possible harm in admitting Detective Wall's statement harmless.
The defendant also objected to Detective Wall's testimony regarding his communications with David Woodruff. Detective Wall was present when David Woodruff identified the defendant at the location of the car in Ama, Louisiana. The State asked Detective Wall if there was any doubt in Mr. Woodruff's mind regarding the identification. To that, Detective Wall responded, "None whatsoever."[4] The defendant objected to the statement as hearsay, representing that Detective Wall could not possibly testify as to what was in David Woodruff's mind. The State responded that the testimony was not offered to prove the truth of the statement, but rather to show how Detective Wall's investigation unfolded and to establish the sequence of events leading to the defendant's arrest.
A proper objection to this statement would have been speculation. The prosecutor was not asking Detective Wall to testify to an out-of-court statement. Therefore, there was no proper hearsay objection. The State asked Detective Wall "was there any doubt in [David Woodruff's] mind" regarding the identification. Since Detective Wall could not know what was actually going on in David Woodruff's mind, this statement should have been excluded as speculative.
Lay witnesses are not generally permitted to give opinion testimony. La. R.S. 15:463. While La. C.E. art. 701 permits lay witnesses to testify in the form of opinions or inferences, such opinions are limited to those rationally based on the perception of the witness and helpful to a clear understanding of the testimony or the determination of a fact in issue. State v. Francis 99-208 (La.App. 3 Cir. 10/6/99), 748 So.2d 484, 489. This testimony, however, would not have been admissible pursuant to La. C.E. art. 701 since Detective Wall could not have rationally perceived what was going on in David Woodruff's mind. The State could have been permitted to rephrase the question to ask whether David Woodruff expressed any doubt as to his identification of the defendant or whether he appeared confident in his identification. Id. The question as phrased, however, was speculative and therefore inadmissible.
However, the admission of Detective Wall's speculative testimony is subject to a harmless error analysis. State v. Merritt, 04-204 (La.App. 5 Cir. 6/29/04), 877 So.2d 1079, 1082-1083, writ denied, 04-1849 (La.11/24/04), 888 So.2d 228. Inadmissible evidence does not require reversal of a conviction, if its admission is harmless. Id. The appropriate inquiry in determining whether the error was harmless is whether the guilty verdict actually rendered was surely unattributable to *713 the error. The factors to be considered in determining whether the error was harmless are the importance of the witness' testimony, the cumulative nature of the testimony, the existence of corroborating or contradictory evidence regarding the major points of the testimony, the extent of cross-examination permitted, and the overall strength of the State's case. State v. Broadway, 96-2659 (La.10/19/99), 753 So.2d 801, 809.
In this case, the defendant did not suffer substantial prejudice from the speculative testimony admitted because David Woodruff, in his subsequent trial testimony, corroborated this portion of Detective Wall's testimony. David Woodruff testified and was also subject to cross-examination by the defense. Furthermore, the admission of the speculative testimony is harmless error, because the verdict actually rendered was surely unattributable to the error. Rather, David Woodruff described the perpetrator, at the scene, to the police, and positively identified the defendant a few hours after the shooting. He also identified the defendant in court. Kenneth Shipley described the car parked by the Woodruff's residence, at the scene, and positively identified the car driven by the defendant a few hours later. Therefore, we find the speculative testimony admitted was harmless and the verdict surely unattributable to its admission.
A mistrial is a drastic remedy. It should be granted only where the defendant suffers such substantial prejudice that he has been deprived of any reasonable expectation of a fair trial. State v. Rodriguez, 02-334 (La.App. 5 Cir. 1/14/03), 839 So.2d 106, 128, writ denied, 03-0482 (La.5/30/03), 845 So.2d 1061. In this case, we find the trial court did not abuse its discretion in denying the defendant's motion for a mistrial.

Excessive Sentence
The defendant argues that his sentence of thirty-six years for attempted armed robbery at hard labor without benefit of probation, parole, or suspension of sentence is excessive, because of his youth and insignificant criminal history.
The State argues that the defendant was a twenty-year old adult when he committed this crime and that the sentence is within the statutorily permitted range. Further, the State notes that the trial court meticulously outlined the factual basis supporting the imposed sentence.
Louisiana Code of Criminal Procedure article 881.1(E) provides that "[f]ailure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review." State v. Adair, 04-120 (La.App. 5 Cir. 5/26/04), 875 So.2d 972, 974-975. This court has reviewed a defendant's constitutional challenge of a sentence, in the absence of a motion to reconsider sentence. Id. However, the failure to file a motion to reconsider sentence or to state specific grounds upon which the motion is based, limits the defendant to a bare review of the sentence for constitutional excessiveness. Id.
In the present case, the defendant did not file a motion for the trial court to reconsider his thirty-six year sentence for attempted armed robbery. Therefore, this Court is limited to a bare review of his sentence for constitutional excessiveness.
The Eighth Amendment to the United States Constitution and the Louisiana Constitution Article I, § 20 prohibit the imposition of excessive punishment. A *714 sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. State v. Wickem, 99-1261 (La. App. 5 Cir. 4/12/00), 759 So.2d 961, 968, writ denied, 00-1371 (La.2/16/01), 785 So.2d 839; State v. Robinson, 04-1417 (La.App. 5 Cir. 5/31/05), 905 So.2d 405, 407-408. In reviewing a sentence for excessiveness, the appellate court must consider the crime and the punishment in light of the harm to society and gauge whether the penalty is so disproportionate as to shock its sense of justice. State v. Lobato, 603 So.2d 739, 751 (La.1992); State v. Robinson, 905 So.2d at 407-408. A trial court is afforded great discretion in determining sentences and sentences will not be set aside as excessive absent clear abuse of that broad discretion. La.C.Cr.P. art. 881.4(D); State v. Adair, 04-120 (La. App. 5 Cir. 5/26/04), 875 So.2d 972, 974-975; State v. Riche, 608 So.2d 639, 640 (La.App. 5 Cir.1992), writ denied, 613 So.2d 972 (La.1993).
The three factors considered in reviewing a trial court's sentencing discretion are the nature of the crime, the nature and background of the offender, and the sentence imposed for similar crimes by the same court and other courts. State v. Knightshed, 00-1410 (La.App. 5 Cir. 3/28/01), 783 So.2d 501, 504-505; State v. Watts, 99-311 (La.App. 5 Cir. 8/31/99), 746 So.2d 58, 64, writ denied, 99-2733 (La.3/24/00), 758 So.2d 145. The issue on appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate. Id., State v. Allen, 03-1205 (La.App. 5 Cir. 2/23/04), 868 So.2d 877, 879-880.
The defendant was convicted of attempted armed robbery and sentenced to thirty-six years, at hard labor, without benefit of parole, probation, or suspension of sentence with credit for time served. The sentencing exposure for an armed robbery conviction under La. R.S.14:64(B) in 1996 was imprison[ment] at hard labor for not less than five years and for not more than ninety-nine years, without benefit of parole, probation or suspension of sentence.[5] The sentencing exposure for an attempt conviction under La. R.S. 14:27(D)(3) was in 1996, as now, "fine[] or imprison[ment] or both, in the same manner as for the offense attempted; such fine or imprisonment shall not exceed one-half of the largest fine, or one-half of the longest term of imprisonment prescribed for the offense so attempted, or both." Therefore, the defendant's sentencing exposure was imprisonment at hard labor for not less than two and one half years and for not more than forty-nine and one half years, without benefit of parole, probation or suspension of sentence. The defendant's sentence for attempted armed robbery falls within the statutorily mandated sentencing range.
Before imposing the defendant's sentence, the trial court gave a detailed explanation of the factual basis, considerations, and the aggravating and mitigating circumstances. The trial court found that in committing the crime the defendant had been deliberately cruel, shot one victim, and created a risk of death or great bodily harm to more than one person. In addition, the court found that the defendant caused the victim of the shooting permanent physical and emotional injuries and showed no remorse nor admitted responsibility *715 for the crimes, which the court noted was the first step toward rehabilitation. The court found that the defendant chose a "totally" innocent victim upon which to commit the crime. The court did acknowledge that the defendant did not have a criminal history except for a few minor juvenile matters and the current crimes for which he was convicted were not premeditated. The court also noted the defendant's age, church attendance, and local neighborhood support, as well as the defendant's lack of a relationship with his father and loss of his mother at age sixteen. Finally, the court explained that diminution or reduction of the defendant's sentence for good behavior was prohibited by La. R.S. 15:571, because he had committed a crime of violence.[6]
The defendant has failed to show that his sentence for attempted armed robbery is excessive. As noted by the trial court, the defendant pointed a gun at the victim's face, and as the victim tried to move the gun away from her face to protect herself, the defendant shot her. The trial judge noted that he remembered the facts of the case clearly. The trial court took into account the defendant's age, criminal history, and the facts of the case. The sentence imposed is within the statutory limitations. Therefore, it does not appear that the defendant's sentence for attempted armed robbery is excessive.

Errors Patent
The defendant requests an error patent review. However, this Court routinely reviews the record for errors patent in accordance with La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990), regardless of whether the defendant makes such a request. The review reveals one error patent in this case.
The commitment entry does not mention whether the defendant is eligible for benefits. However, the September 17, 1997 sentencing transcript states that the defendant's thirty-six year sentence for the attempted armed robbery conviction is to be served without benefit of parole, probation, or suspension of sentence. Generally, when there is a discrepancy between the minutes and the transcript, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983). Further, in State v. Williams, 00-1725 (La.11/28/01), 800 So.2d 790, 799, the Louisiana Supreme Court found:
In instances where these restrictions are not recited at sentencing, La. R.S. 15:301.1(A) deems that those required statutory restrictions are contained in the sentence, whether or not imposed by the sentencing court. Additionally, this paragraph self-activates the correction and eliminates the need to remand for a ministerial correction of an illegally lenient sentence which may result from the failure of the sentencing court to impose punishment in conformity with that provided in the statute.
Since the benefits provisions of La. R.S. 14:27:64 are self-operating under La. R.S. 15:301.1, it is not necessary to remand the case and order the trial court to correct the commitment to conform to the transcript.
*716 For the foregoing reasons, the convictions and sentences are affirmed.
AFFIRMED.
NOTES
[1] The bill of information indicates that the amendment was made on March 24, 1997, but a review of the transcripts indicates that the amendment was made on June 24, 1997.
[2] The amended bill of information still indicates that the defendant committed the attempted second degree murder while in commission of a felony.
[3] Compare State v. Sanders, 93-0001 (La.11/30/94), 648 So.2d 1272, 1284, citing Smith v. Cajun Insulation, 392 So.2d 398 (La.1980), where the Louisiana Supreme Court has recognized that courts should "look through the caption of pleadings in order to ascertain their substance and to do substantial justice . . ." Also see, Atchley v. Atchley, 01-67 (La.App. 5 Cir. 5/30/01), 788 So.2d 690, 693, writ denied, 01-1915 (La.2/8/02), 808 So.2d 349.
[4] Infra.
[5] This sentencing provision was amended in 1999, making the minimum sentencing ten years rather than five years. La. R.S. 14:64(B) 2005, amended by 1999 La. Acts No. 932 § 1. The law that applies is the law in effect at the time the offense was committed. State v. Sugasti, 01-770 (La.App. 5 Cir. 11/27/01), 802 So.2d 943, 946, citing State v. Wright, 384 So.2d 399, 401 (La.1980).
[6] In 1996, when the crime was committed, La.C.Cr.P. art. 890.1 allowed the sentencing court to deny or place conditions on eligibility for diminution of sentence for good behavior unless prohibited, if the defendant was convicted of a crime of violence as defined in La. R.S. 14:2(13) and sentenced to imprisonment for a stated number of years or months. Note: La.C.Cr.P. art. 890.1 subsequently was changed to require the court when imposing a sentence to designate whether the crime involved was a crime of violence or an attempted crime of violence as defined or enumerated in La. R.S. 14:2(13).